DE WITT C. BENHAM and FRANKLIN W. SHAEFFER, Trustees, &c., and STEPHEN J. FIELD *v.* GEORGE ROWE, and J. O. GOODWIN, and WILLIAM FORD.

Where a power of sale is contained in a mortgage, and under a sale, by virtue of such power, the mortgagee becomes the purchaser, the equity of redemption still attaches to the property in favour of the mortgagor.

In such case the mortgagor has a clear right to redeem.

Where the complaint does not charge the mortgagee in possession with negligence, or improper conduct, in leasing the mortgaged premises, but requires him to account for the rents he actually received, it is proper in the Court to refuse to instruct the jury, that he might have leased the property differently, and to charge him with what he might have received, if so leased.

It is the duty of a mortgagee in possession, to exercise the same care and supervision over the property, as a prudent man would over his own.

If such mortgagee act in bad faith towards the owner, or is guilty of gross negligence, such as will greatly injure the owner, he is liable to such damages as a jury may assess.

Where a sale was irregularly made under a power contained in a mortgage, and the bill filed by the mortgagor did not ask to have it set aside, such sale must stand.

But where such sale was not made for money, and the vendor under the power, received in stead, an article of fluctuating value, he is clearly chargeable with the highest market value of the lot sold, to be credited to the account of the mortgagor.

Where the Court is asked to instruct the jury on a question entirely abstract, in reference to the facts of the case, it is proper to refuse.

A mortgagee in possession is not entitled to make any charge, by way of compensation, for his trouble in managing the property, and collecting and receiving the rents.

Where a mortgagee takes possession of the mortgaged premises, his care and trouble are bestowed for the furtherance and protection of his own interests. He is not a mere naked trustee, nor is his capacity that of an agent. While in possession, he is *quasi* the owner. He takes the charge upon himself voluntarily, and has no right to compensation from the mortgagor.

It was error in the Court to decide that the defendants held the affirmation, and therefore to give them the opening and conclusion of the cause. The plaintiff, always in contemplation of law, has the affirmative, and has the right to open and conclude.

APPEAL from the District Court of the Tenth Judicial District, Yuba County.

The complaint sets forth, that Field, the plaintiff, on the 26th day of September, 1850, mortgaged to Mark Brumagim and Lewis Cunningham, certain property in Marysville, called in the papers, "the Levee property," to secure the payment of $2000, for which he gave his note, payable in thirty days. That Field mortgaged the same property and another lot, designated as the "House lot," on the 26th of October, 1850, to George Rowe, one of the respondents, to secure a note of $2000, payable in sixty days. And on the 1st of November, 1850, he mortgaged the same "levee property," another lot near the St. Charles Hotel, two lots on Cortes square, and two lots on the Slough, all in Marysville, to Ford and Goodwin, to secure a note of $2,500, payable in sixty days. This mortgage to Ford and Goodwin, contains a power, authorising them, upon default in payment of the note at its maturity, or of its interest, to sell the mortgaged premises, "either at private sale or public auction, after ten days previous notice of such intended sale, and to execute conveyances." "And out of the money arising from such sale, to retain the amount of said note, and the interest which shall then be due thereon, together with the costs and charges of the sale of said premises, and to render the overplus of the proceeds of such sale, if any there be, unto the said party of the first part."

A like power is contained in each of the preceding mortgages.

That afterwards, on the 26th December, Field conveyed all his estate to Charles Ellet and D. C. Benham, in trust for the benefit of his creditors; which included his equity of redemption in the above mortgages. That on the 20th of September, 1851, the said Charles Ellet, one of the above trustees, with the approval of Benham and Field, conveyed to Franklin W. Shaeffer the trust estate contained in the foregoing deed, to hold the same in connexion with De Witt C. Benham, as joint trustee, and upon the same trusts, &c. That sometime in February, 1851, the defendants, Goodwin and Ford, took possession of the property mortgaged to them, and agreed to divide the property covered by both of these mortgages, and keep it, and to execute conveyances to each other. And that by such agreement the

said Goodwin and Ford were to keep and have from Rowe, a conveyance of a part of the property mortgaged to him, and the said Rowe was to keep the balance, and receive a conveyance thereof from Ford and Goodwin; and to make up for any irregularity in the division, the said Goodwin and Ford were to convey a portion of the property mortgaged to them, to the said Rowe, and also to pay Rowe, on account of said mortgage, $700; which it was agreed should be applied to the said mortgage of Cunningham and Brumagim; and also to give said Rowe a building, situated on a lot (2) which was covered by both of their mortgages.

That Rowe, on or about February 15, 1851, in pursuance of his agreement with Goodwin and Ford, took possession of, and removed from lot (2) the building thereon, and converted the same to his own use, worth $600; and received from Ford and Goodwin lots Nos. 1 and 2 of block six, and lots Nos. 6 and 7 of block three, which were worth $400 each, and the sum of $700, applied as above to the mortgage of Cunningham and Brumagim.

That Goodwin and Ford paid to Cunningham and Brumagim $1300, half the amount due on their mortgage, in addition to the said $700 paid for defendant Rowe; leaving a balance of $600 due on their said mortgage, which was paid with interest by Rowe, on the 10th July last. That on the 28th April, 1851, Goodwin and Ford executed in the name of Field, the plaintiff, pretending to act as his attorney in fact, under the power contained in their mortgage, a conveyance to Rowe of all the property described in their said mortgage, setting forth a money consideration of $3983. And that Rowe, on the 21st July last, conveyed back to the defendants Goodwin and Ford, a portion of the property contained in the said conveyance to him, as described in the said complaint, reciting a money consideration of $3000; which several conveyances, the said complaint charges, were made for the purpose of carrying into execution the agreement between the several parties thereto, as above set forth. The complaint further charges that no money consideration was paid on the alleged sales by either party to the other; but that the said conveyances were made by the defendants, for the purpose of more easily dividing the mortgaged property among themselves, and forfeiting the rights of the plaintiff thereto.

And charges that no sufficient notice was given to Field of the intention of Goodwin and Ford to sell under the power in their mortgage, nor to Ellet or Benham, the trustees; but admits that the notice marked E. was given to Ellet and Benham, the sufficiency of which is denied; and plaintiff insists that the power only authorized a sale *for cash;* that no such sale had been made; that the conveyances above stated conferred no new rights on the parties, or other title than they respectively held before the conveyances were executed among themselves. And charges that Rowe sold a lot to House about the month of April last, which is included in *his* mortgage, and not in the others, for $1000, and, about the 12th June thereafter (1851), caused the same lot to be sold at public auction under the power contained in his mortgage, when the same was bid in by House for $200; and insists that Rowe should be charged with the $1000, which should be credited on Rowe's mortgage, or with the fair value of the lot, which is worth more than $200, and is worth $800. And charges that since defendants took possession of the property about the 1st day of February last, they have remained in possession of their respective portions as agreed among themselves, and have leased the same, and received the rents; and that Rowe has received large sums as rent; plaintiffs knew not how much; and Rowe has refused to account, &c., except upon the condition that he retain possession of the mortgaged premises now held by him, and receive a quit claim deed for the same from the said assignees of Field; on the receipt of which he is willing to relinquish the notes of Field mentioned in the mortgages; and plaintiff avers that the property in Rowe's hands is worth $250 per month; and asks that he be charged therewith unless he produce his accounts, and show the true amount received by him. That Cunningham and Brumagim, their mortgage being paid by Goodwin, Ford and Rowe, assigned the same and their estate therein, one half to Rowe, and the other half to Goodwin and Ford, and passed the note of Field with the said assignment to the same parties.

That on the 26th September (the present month), the plaintiffs executed to Goodwin and Ford a conveyance of certain property described; who, on the 29th September, executed to Field a general release of all mortgages, notes and demands whatsoever,

and including the half of the mortgage assigned to them by
Cunningham and Brumagim, against whom therefore no personal
claim is made, they being made parties, because of the execution
of their conveyance to Rowe, assuming to act as attorney in fact
for Field.

The bill then asks to charge the defendant Rowe with the
sums alleged to have been received by him with all rents, &c.,
and to give him certain credits, &c.; and avers that he was
indebted to plaintiffs $1335, on the 26th September, 1851. And
prays for an account, &c., and for delivery up to plaintiffs of
certain premises held by defendants, covered by his mortgage,
and not conveyed by the deed of 26th September, instant, to
Goodwin and Ford. That the conveyance of 29th April, 1851,
be declared void so far as it covers certain lots; and that defen-
dants acknowledge satisfaction on the respective mortgages, and
of the mortgage assigned by Cunningham and Brumagim, cancel
the notes, &c., and for an injunction to restrain Rowe from col-
lecting rents, &c.

The answer of Rowe admits the several mortgages and notes
as laid in the complaint, the deed of assignment, &c.; denies
payment further than is confessed in the answer, and avers that
Field frequently requested him to sell some of the mortgaged
property to pay himself, or that Rowe, Ford, and Goodwin,
should pay Cunningham and Brumagim's mortgage and notes,
and take the land, and thus relieve Field's of this liability, &c.
That he sought a purchaser for the property without success.
That in January, 1851, being able to do no better, and the trus-
tees of Field paying nothing—the said Ford and Goodwin gave
the notice of sale stated in the complaint, which was directed to
both trustees, but served on Ellet only, Benham being absent. The
sale was postponed for sometime; and in the month of February,
1851, Ellet informed Rowe that he had received information from
Field on the subject, and he (Ellet) then and there made a formal
delivery of the said mortgaged premises to the said Rowe, and
the said Goodwin acting for the said Ford and himself. And it
was agreed between Ellet and Rowe, and Field and Goodwin,
that they should assume and pay the said Cunningham and Bru-
magim the note of Field to them, and for that, and the amounts
due on those notes, they should have the mortgaged property; and

Ellet agreed that when Benham came home they would convey the same to the defendants; and that under this arrangement, Rowe, Ford and Goodwin, took and held possession of the property. Rowe admits that in January, 1851, he took possession of some unoccupied property—part of the mortgaged premises,—and gave Ellet notice of the fact, who resisted it, and Rowe abandoned it. After this arrangement with Ellet, Rowe, Goodwin and Ford took possession of the property, and divided the same, as they now hold it. Rowe agreeing to give Goodwin and Ford half of a small house for the choice, which he valued at $200. That a few days before the 10th March, 1851, Benham and Ellet, and Rowe, Goodwin and Ford, met, to determine in what manner the conveyance should be made for said property; and the said Goodwin and Rowe insisted, that if they gave up all their notes against Field, including the one to Cunningham and Brumagim, that they ought to receive a warranty deed for the said premises. This the other parties dissented to. And to settle the matter, it was agreed that a quit claim deed should be made by Ellet and Benham, to Rowe and Goodwin, for the said real estate; and that Rowe, and Field, and Goodwin, should hold the notes and mortgages as security for the title till Field should make a warranty deed to them, &c. Rowe was to prepare the papers, and did so; and on the 10th March, 1851, the same were tendered to Ellet and Benham for their approval and execution; that the said Ellet and Benham had changed their minds, and would not accept or approve the said papers, which compelled said Rowe, Goodwin, and Ford, to resort to the power of attorney, authorizing them to sell, contained in their several mortgages. That on the 16th April, 1851, they gave a notice to Benham of their intention to sell, &c., as they had before given notice to Ellet. That on the 28th April, 1851, the said Goodwin acting as attorney for Field, under the power, &c., conveyed to Rowe, subject to the mortgages of Cunningham and Brumagim, and the said Rowe, the further consideration of the said conveyance being the amount due the said Ford and Goodwin on their note and mortgage, which was taken to be $3,983. That on the 1st July, Rowe quit claimed the lands described in exhibit D of plaintiff's complaint to Ford and Goodwin, and other property, (as described,) and that the object of the said conveyances to

each other was to perfect the titles thereof in themselves, and accomplish what Ellet and Benham ought to have done.

That Rowe on 30th May, 1851, caused to be posted up the following notice on the City Hall, &c., and published it three times in the Marysville Herald. "*Public Sale.* Stephen J. Field, Charles Ellet, De Witt C. Benham, Sandford G. Clark, Henry H. Clark, and all others whom it may concern, are hereby notified, that on the 12th day of June, 1851, at 12 o'clock M., I will sell at public auction at the door of the Court House, in the city of Marysville, Yuba county, California, lot No. 7 of block (3) in range F, situate in said city of Marysville, to satisfy in part an amount due me by said Field on note and mortgage, May 30th, 1851. George Rowe." That at the time and place aforesaid, the lot was struck off to F. W. Barnard at $200, who bid for the same for Henry P. House, that being the best price that could be obtained for it. That House paid for said lot $1000 of Yuba county warrants, worth at the time of sale about forty cents in the dollar, equal to $400 in cash; and Rowe made a deed to House as attorney of Field, under the power in his mortgage. That Goodwin and Ford after the agreement with Ellet, that they should have the mortgaged property, &c., for the amount due on the three mortgages, in compliance with the said agreement, paid to Cunningham and Brumagim on the 26th February, 1851, $2000 on their note, &c., which, when all paid, was to be indorsed to Goodwin for the indemnity of himself, Ford and Rowe against Field; that $1,300 of this sum was paid for Goodwin and Ford, and $700 was paid by them for Rowe— leaving $600 to be paid by Rowe, who some days after sold to Ford and Goodwin his interest (one-half) in the large frame house, for $700, which paid them the said $700 paid for Rowe to Cunningham and Brumagim. About the same time Rowe moved the small house to his own lot; and about the 10th June, paid $862, the balance due to Cunningham and Brumagim, and took an assignment of their note and mortgage to himself, Ford and Goodwin. That he never received any money from Field or his trustees on any account, except from the sale and rents of the said premises, of which he exhibits a statement, &c. And asks the Court to decree the title to the said property in him; or if not, to decree that the money due him may be paid before com-

pelling him to part with the possession, &c.; and denies all allegations not admitted, and prays that the injunction be dissolved.

In the progress of this case the record shows certain interlocutory proceedings, which were considered on the appeal.

December the 3rd, 1851. The Court ordered that this cause be referred to T. L. and N. E. Whitesides and C. Filkins, as referees, to hear and decide the issues herein, and to report all matters of fact, in pursuance of section 183, of the act entitled "An Act to regulate proceedings in civil cases."

The referees filed their report Dec. 19th, 1851, which was excepted to January 5th, 1852, by defendants.

A receiver was appointed by the Court, March 24th, 1852, to collect the rents, &c., and pay the money into Court. April 6th, the receiver was allowed $65 for services.

April 6th, 1852, J. T. Halsey was, on the motion of the Court, appointed sole referee, to audit the accounts, &c. From these orders the plaintiffs appealed to the Supreme Court, April 8th, 1852; and the appointment of the referee was set aside May 14th, 1852, by the Supreme Court.

And on the 21st April, 1852, the report of the referees first appointed, filed 19th December, 1851, was set aside by the District Court, and the injunction dissolved. And the cause was ordered to be submitted to a jury. Plaintiffs excepted.

The cause was tried in Yuba county, at a term held the 5th and 6th of May, 1852. The term commenced on the third Monday of April, and was held at Marysville till Saturday, and then adjourned for one week, in order that the judge might hold the regular general term in Sutler county, of the same district; which was fixed for the third Monday of April. After holding the general term in Sutter county, the term of Yuba county was continued, pursuant to the adjournment of the district judge. At such continued general term this cause was tried.

When the cause was called for trial, a question arose who should have the affirmative, which the Court ruled in favour of the defendants, but allowed the plaintiffs to open and introduce evidence to the jury in the first place. Plaintiffs excepted to the ruling of the Court, and also to the authority of the Court to continue the general term.

A witness called for plaintiffs, said that the portion of the

property covered by Rowe's mortgage, rented to Simmons and White, might have been rented with ordinary diligence, from May 1st to October 1st, 1851, for $200 per month; that he had offered that sum himself; and that the portion occupied by Col. Perry, might have rented for the same period, for $150 a month: and said it was customary to rent by the month in Marysville.

Another witness was asked, "What rent might have been received by defendant Rowe, from the mortgaged property, from April 5th to October 1st, with ordinary care and prudence?" Defendant objected, and the Court ruled that it was inadmissible to prove the rents that might have been received, for any fractional part of the term of the lease, and sustained the objection, and plaintiff excepted. The witness was then asked, "What rent might have been obtained by defendant Rowe, on a lease for one year, of the mortgaged property, the rent payable monthly, commencing April 5th, 1851, with ordinary care and prudence?" and he answered, $150 per month for one, and $100 for the other, on a lease for one year. Rented by the month, from April to October, $350 might have been obtained. It is customary to rent by the month at Marysville. The Court here again decided that the question must in all cases be, as to what might have been received on a lease for a year, that being the period of the lease executed by Rowe. The plaintiffs excepted to this ruling.

Plaintiffs called witnesses to prove the rate at which property rented, or might have rented; to the value of Yuba county script; the increase of rents, occasioned by the rise of property; the improvements on the property, when Rowe went into possession; the value of the small house removed by Rowe, &c., to which no objection was taken.

The defendants then read the documentory evidence, &c., which was admitted by consent; and offered the deposition of J. O. Goodwin, which was objected to, on the ground of its being taken, as was alleged, by Field, pending the appeal to the Supreme Court, in relation to the appointment of J. Halsey, a referee; which order was never acted on by defendant Rowe; and in which appeal an undertaking of $300 had been given by plaintiffs, and no other undertaking; and which appeal had been abandoned by the plaintiffs before the trial before the jury; which

objection was overruled by the Court. The plaintiffs then objected to reading the deposition, unless proof was made that he had been served with notice. The Court held that the certificate of the clerk of the Court, before whom the deposition was taken, was sufficient evidence of the fact, and admitted the deposition; to which plaintiffs excepted.

Defendants also called witnesses to prove the rate of rents and value of property; the value of the Yuba county warrants; the recent rise of property; the value of the small house removed, &c., &c., to which no objection was taken; and admitted payment of $950 by the clerk of the Court—paid into Court by the receiver.

The defendant claimed the conclusion in addressing the jury, which the Court ruled in his favour, and the plaintiff excepted.

The plaintiff asked the Court to instruct the jury as follows:—

1st. That when the defendant Rowe took possession of the mortgaged premises, it was his duty when he leased them, to do so for the ordinary and customary periods for which leases were given in Marysville, by which the highest rents could be obtained.

2d. That if the jury believed it was the custom in Marysville, to lease by the month, and that this was the most advantageous mode of leasing, they may, in making up the accounts, charge Rowe with what might, with ordinary care, have been received each month as rent for the mortgaged property.

3d. That the defendant Rowe, if guilty of gross negligence in the management of the mortgaged property, may be charged with the rents and profits which might have been received from the property.

4th. That the defendant Rowe having it in his power to show what he received for the $1000 of scrip, and having neglected to do so, the jury might presume that he received the highest sum given for scrip at any time subsequent to its receipt.

5th. That Rowe being a mortgagee in possession, could not make a lease of the property for one year so as to bind Field, the mortgagee, unless there was an absolute necessity for it.

6th. That defendant Rowe is not entitled to make any charge by way of commissions for his trouble in managing the property, and collecting and receiving rents.

7th. That all payments made by the defendant Rowe, on liabilities of Field, made with the money or property of Field, are to be regarded as so many payments made by Field himself.

8th. That it is of no consequence whether Ford and Goodwin paid the $2000 to Cunningham and Brumagim, entirely for themselves, or paid part of it for Rowe; provided, that all they ever received from Rowe for such part payment belonged to Field.

9th. That the rents and proceeds received from the mortgaged property, must first be applied to the payment of the mortgage of Cunningham and Brumagim, except so far as the defendants may have satisfied the same out of their individual means.

The defendant asked the Court to instruct the jury as follows:—

1st. That if they believe from the evidence that Field, on the 26th October, 1850, made his note to Rowe for $2000, with interest, at ten per cent. a month, that they allow the said Rowe in the account for such principal and interest at ten per cent. a month till this date.

2d. That if they believe from the evidence that Field made his note to Cunningham and Brumagim, for $2000, with ten per cent. interest a month till paid, and that Rowe afterwards became the owner of half the said note, that they allow the said Rowe for such one-half, and for the interest due on such half, at ten per cent. a month till this date.

3d. That if they believe from the evidence that Rowe paid either by himself, or any other person $49, or any other sum for repairs of the mortgage premises, that they allow him for such sum.

4th. If they believe from the evidence that said Rowe's services in the business about the mortgaged premises was worth any sum, that they allow him such sum as his services were worth.

5th. That if they believe from the evidence that Rowe paid $45, or any other sum for taxes on the mortgaged premises, that they allow him such sum.

6th. That they allow Field the amount that they believe he ought to be credited with, for the half of the house that Rowe relinquished to Ford and Goodwin.

7th. That they allow to Field for the small house removed by Rowe, what it is found to have been worth.

8th. That they allow Field for the amount of rents actually received by Rowe for the Perry and Saunders, and White property, according to the proof.

9th. That they allow Field for the county scrip received from House, according to their value in the market at the time they were contracted for.

10th. That they allow Field for the $920, received by Rowe from the clerk of the Court, collected by the receiver of Cunningham and Perry, from rents of the Simmons and White property, and paid into Court.

11th. That they allow Field for the $16, received by Rowe as rent for the small house, removed before the same was removed by Rowe.

12th. That in stating the account between the parties, they should always take the credit, which they find for the said Field, out of the interest then due the said Rowe, unless the amount of credits is greater than the amount of interest then due; and if the amount of credits is greater than the amount of interest due at any time, that they should first exhaust the interest by the credit, and then apply the balance of the credits then due to the extinguishment of so much of the principal. And that in no case is the credit at any time to be taken out of the principal, unless all the interest then due is exhausted by the credit.

13th. That they may allow interest on the interest due monthly, when the same is not paid.

The Court then charged, and refused to charge, as follows, upon the instructions asked by the plaintiffs :—

1st. Insert the words " the county" in lieu of Marysville.

2d. It is the duty of the mortgagee in possession, who as such becomes the trustee of the mortgagor, to exercise the same care and supervision of the property as a prudent man would over his own, and if he acts in bad faith towards the owner of the estate, or is guilty of such negligence as will greatly injure the owner, then he is liable for such damages as a jury may assess; mere ordinary care and prudence is required of the defendant.

3d. *Given*—with this qualification, that the defendants, if found

guilty of gross negligence by the jury, can only be charged the difference between the rents and profits admitted to have been received, and the amount which in the opinion of the jury ought to have been received.

The 4th, 5th, 6th and 7th were refused.

8th. *Substitute*—When Ford and Goodwin, and the defendant Rowe purchased of Cunningham and Brumagim their mortgage of $2000, all of the rights of the latter, both at law and in equity, was transferred by virtue of the sale to the purchasers, of which the defendant Rowe was entitled to one half; and all and every species of the mortgaged property sold by the mortgagees whilst in their possession, and which they may have converted to their own use, the value of such property is to be placed to the credit of Field.

The Court then charged and refused to charge on the instructions asked by the defendant, as follows:—

1st. *Given*—with this addition, that if the jury find that Rowe had received payments, they must calculate the interest at the conventional rate, (that is ten per cent. per month,) up to the date of the payments; subtract the credit from the interest accumulated; and if there be a surplus, apply the same to the principal, and so on with each succeeding payment.

2d. *Given*—but subject to such credits as the jury may find to have been paid, either by the plaintiffs or out of the proceeds of the estate.

3d. *Substitute*, as follows:—In respect to the rights of the mortgagee in possession, equity will allow him for all repairs necessary for the support of the property ; but he cannot charge the mortgagee for *general* improvements, made without the consent of the mortgagor, so as to make it more difficult for him to redeem his property.

4th and 5th. *Given*.

6th. *Substitute*, as follows:—Field, the mortgagor is entitled, and should be credited with, one half the value of the house, which Rowe, and Ford and Goodwin wrongfully divided between them; the mortgagees in possession had no right to make partition of this house, or to have affixed any value to it, which would affect the rights of the mortgagor.

7th. *Given.*

8th. *Given*—with this addition.   Unless the jury believe from the evidence, that the defendant Rowe was guilty of either negligence or fraud, by not renting the property for its supposed value at the time.

9th. *Substitute* for the 9th instruction.

It appears from the testimony of Judge House, that Rowe had contracted with him for the sale of a lot prior to the day of sale, conditionally, however, for Rowe had set a minimum cash value of $400 on the property.   House proposed to pay in county warrants; and it seems that Rowe would not receive them at a greater value than forty cents to the dollar.   On the day of sale, a third person attends, and as the agent of House bids the sum of $200.   Instead of this sum being paid according to the terms of sale, there seems to have been no attention paid to the bid, and Rowe, the mortgagee, in possession, making the sale, went on to perfect the contract, that he had previously and privately made with Judge House, and deeded to him the lot.   There does not appear to be the least privity between the sale as made on the day advertised, (the 12th June, 1851,) and the deed to Judge House.   Rowe at that time had no right to sell the property, without conforming rigidly to the power contained in the mortgage, and Rowe as trustee could not sell at private sale.

10th. *Given.*

11th. *Given.*—The amount to be ascertained from the evidence.

12th. *Given.*

To the charges, and refusal of the Court to charge, on the several points requested, the plaintiffs and defendants excepted. The plaintiffs excepting particularly to the refusal of the Court to give the 2d, 3d, 4th, 5th, 6th and 8th instructions asked by them, and to the charge of the Court on the 1st, 2d, 4th, 8th and ninth points asked as instructions by defendant.   And the defendants excepting to the charges on the 1st, 7th and 9th points asked by the plaintiff, and to the refusal of the Court to give the 3d, 5th, 6th, 7th and 9th instructions asked by defendants.

The jury brought in a special verdict, " that there was due the defendant Rowe by Field, $4055." Upon this verdict, the Court entered judgment; and plaintiffs appealed.

*S. J. Field*, for appellant.

1st. The equity of redemption is inseparable from a mortgage, and cannot be disconnected, even by agreement of parties; 2 Story's Eq. Jur. sec. 1019; 4 Kent's Com. 159. 191; Colkins *v.* Colkins, 3 Barb. N. Y. Rep. 310; Holdings *v.* Gillespie, 2 Johns. Ch. 34.

2nd. Defendant Rowe sets up to defeat plaintiff's right of redemption: 1st. A sale under the power contained in the mortgage. 2nd. A part performance of a parol contract with Ellet for the mortgaged property. As to the *first*, the condition precedent to the exercise of the power, was never complied with. *Second*, No sale in fact ever took place. *Third*, Had there been a sale under the power, the mortgagees could not have been interested directly or indirectly, in the purchase. The power in the mortgage authorises a private, or public sale, "after ten days notice to the party of the first part, of such intended sale." This power must be strictly construed; the notice is a condition precedent to the exercise of the power. Notice of a private sale, must contain the name of the individual purchaser, the price, and day of sale, to enable the party to pay the mortgage in the mean time, if dissatisfied. Notice of public sale, must state time and place, that the party may see to it, and prevent a sacrifice of his property; the object in both cases is to ensure good faith and prevent fraud in the sale; 1 Kent's Com. 330, 331; Hawkins *v.* Kemp, 3 East, 410; Doe *v.* Peach, 2 Maule & Selw. 576; Wright *v.* Barlow, Ib. 572; Wright *v.* Wakefield, 17 Ves. 434; Sugden on Powers, 205, 206. 220. 229, 230. 252. No notice was served on Field, the grantor of the power. The notice to Ellet, does not state whether the property will be sold at private sale, or public auction. It states no person, time or place. "On the 1st day of February, *or as soon thereafter as convenient*," is not very definite. It was served on Ellet, January 17th, 1851, but not on Benham, until April 16th.

No sale ever in fact took place under the power. The power only authorises a sale for cash. It directs a disposition of the proceeds, after payment of the mortgage. The conveyances were executed solely to make title, and no sale was ever made nor money consideration passed; 4 Kent's Com. 331. Mortgagees in possession are under like obligations to account for rents,

&c., as trustees; and cannot purchase the mortgaged property, at a sale made under a power to themselves. They cannot be sellers and purchasers at the same time. They are required by the trust to effect the *best* sale—a position incompatible with that of a purchaser; 4 Kent's Com. 167. 438, bottom of page. Ex parte Ashly, 1 Mont. & Ayr. 82; Richardson v. Johns, 3 Gill & Johns. 163; Huddix v. Huddix, 5 Litt. 202; Davis v. Simpson, 5 Har. & Johns. 147; Care v. Abeel, 1 Paige, 393; Davoue v. Fanning, 2 Johns. Ch. 259; McClenahan v. Chambers, 1 Morris, 44; Harvy v. Cramer, 4 Cow. 718; Armstrong v. Campbell, 3 Yerg. 201; 1 Story's Eq. Jur. sec. 322.

As to the alleged part performance of a parol contract with Ellet.—Ellet could not act without the consent of his co-trustee; and never did make any contract. Nor was there any part performance, to take the case out of the statute of frauds; defendants have always treated the mortgage as subsisting.

Ellet is one of the trustees; the power is joint, and could not be executed by one; Sinclair v. Jackson, 8 Cow. 544; Woolbridge v. Walker, 3 Bibb, 350; McRea v. Tanner, 4 Har. & Munf. 444; Bergen v. Duff, 4 Johns. Ch. 368. Ellet never did make any contract. The letter of Field, from San Jose, contains a proposition to take the Levee property and cancel the mortgage, and give up the notes. This was never accepted. All the negotiations were broken off, because of the cancellation of the notes and satisfaction on the mortgages; the very conditions named in the letter, were rejected. The statute concerning fraudulent conveyances, sect. 8, page 267, makes every *contract* for the sale of land *void*, unless the same be in writing, and submitted by the party making the sale.

There never was any performance to take the case out of the statute. If no contract, there could be no part performance. But his alleged part performance consists, as he alleges, in his taking possession and paying $700 to Cunningham and Brumagim. Now he and Goodwin took possession as mortgagees, and never relinquished possession. Goodwin says they never relinquished any portion of the property, from the time they went in as mortgagees. And as to the payment of $700, he says Rowe never had *one cent;* he gave to Goodwin, who paid the money in the first place, Field's property for the $900; that is, Field paid

the money; 2 Story's Eq. Jur. sec. 760, and authorities cited.  Our
statute does not "abridge," neither does it "enlarge," the pow-
ers of the Courts of Equity, to decree a specific performance of
contracts, in cases of part performance; 2 Story's Eq. Jur. 756,
7, 8. 760. 1, 2. 5 and 6.   Defendants have always treated the
mortgage as subsisting.   The conveyance to Rowe of April 28th,
so recites it, and it is under this he holds; and this was executed
more than two months after the alleged part performance.   As
late as May 30th, he published a notice in the Marysville Herald
and in the streets, that the sale would be made to "satisfy in
part, an amount due me by said Field, on his note and mortgage;"
and in June he sells under the mortgage; 3 Barb. N. Y. Rep.
308, 9.

If, then, no title passed to Rowe under the conveyance from
Goodwin and Ford, nor on the ground of part performance, &c.,
he still holds as mortgagee; and plaintiffs seek to redeem the
property by paying the debt, whatever it may be.

The Court erred in setting aside the report of the referees;
because the exceptions were not taken in the progress of the trial,
but were drawn up and filed seventeen days after the report had
been filed; Tyson v. Wells and Skinner; See Practice Act, sec.
188.   But the ground on which it was set aside, is not taken in
the exceptions, to wit, that the amount, if not collected by Rowe,
is not stated in round numbers, but can only be ascertained from
the report by calculation.   The reference was made upon con-
sent.

Rowe appealed before the referees, and examined witnesses:
in his motion to set it aside, he did not pretend it was not by
consent.   The objection is too late; 10 Johns. Rep. 486; 10
Wend. 560; 6 Hill, 17; 3 Ib. 221.

The Court erred in ordering the cause to be tried at a con-
tinued general term in May.   And erred in compelling the plain-
tiff to take the negative on the trial, because the issues call for
proof on the part of the plaintiff in the first instance.   And the
plaintiffs alleging payment to defendants necessarily had the
affirmative; and would have had if the action had been brought
by Rowe to enforce the debt from plaintiff.

The Court erred in excluding evidence of the amount of rents
Rowe might have received from the mortgaged property, from

5th April to October 1st, 1851, with ordinary diligence and care. The mortgagee in taking possession assumes ownership, and is bound to manage it as a prudent owner would. Bell *v.* Mayor of N. Y. 10 Paige, 73; Van Buren *v.* Olmstead, 5 Paige, 1; Rogers *v.* Rogers, 1 Paige, 188. And erred in substituting the words "the county" for the word "Marysville" in the first instruction asked by plaintiff; also in refusing the 3d instruction and to the qualifications attached thereto by the Court. Gould *v.* Tancred, 2 Atk. 534; Buckman *v.* Astor, 9 Paige, 517. In refusing the 4th instruction, and in giving the charge it did to the 9th instruction asked by defendant. The refusal and charge led the jury to disregard the item of county warrants, under the impression that the lot would be restored to Field. The sale to House could not be set aside without his being made a party to the record. And in refusing the 5th instruction. Hungerford *v.* Clay, 9 Mod. 1; 1 Hilliard on Real Prop. 393. In refusing the 6th instruction, and in giving the 4th instruction asked by defendant. 4 Kent's Com. 166; Bonethon *v.* Hackman, 1 Vern. 316; French *v.* Bacon, 2 Atk. 120; Godfrey *v.* Watson, 3 Atk. 517; Longstaff *v.* Fenwick, 10 Ves. 405; Clark *v.* Robbins, 6 Dana's Ken. Rep. 350; Moor *v.* Cable, 1 Johns. Chan. 388. And in refusing the 8th instruction. The payment of $2000 was made by Ford and Goodwin; Rowe's proportion was paid by relinquishing to them half of Field's house. The payment must therefore enure to Field's and not to Rowe's benefit.

The Court erred in giving the 1st instruction asked by defendant. Rowe was called on repeatedly for an account of rents, &c., which he refused, insisting on a quit claim deed for the property as a condition—on receiving which, he expressed a willingness to relinquish all personal liability of Field upon the notes. The suit is brought to compel a recognition of plaintiff's rights, and an account, &c., which Rowe denies and refuses, and sets up his fraudulent acts, which he seeks to sustain, in order to confiscate plaintiff's rights, &c. It would therefore be inequitable to allow him interest beyond the date of the commencement of the suit. The plaintiff could tender no amount, because Rowe denied that there was any debt, and plaintiff could not ascertain any amount. Defendant cannot, therefore, insist on the enormous rate of in-

terest.   To allow him interest for want of a tender would be to allow him to gain by his own wrong.

The Court erred in the form of the judgment.   It does not cover the issues.   It does not set aside the conveyances of Ford and Goodwin, or of Rowe.   It does not decree a cancellation of the mortgages and notes; nor hold the mortgages as subsisting, or the title of the property in the plaintiff; or decree restitution upon payment of the balance; but simply orders a sale of the property to pay the balance.   And in allowing interest upon interest at the rate of ten per cent. a month—and in not allowing costs to plaintiff, there was error.

*W. H. Martin,* for respondent.

The District Court set aside the sale of the mortgaged property from Goodwin and Ford to Rowe, and Rowe's re-conveyance of half of it to Goodwin and Ford.   This cannot be made the subject of review by appellants, for these conveyances were held void by the Court, precisely in accordance with the prayer of plaintiff's complaint.   (See Interlocutory Decree of District Court, folio 371.)

As respondents never consented to the reference, the order of Court authorizing it was *void*—they were never bound by it, and it was totally inoperative.   Pollock *v.* Smith and Wilson, Sup. Ct. Cases.   But if regular, respondents took these exceptions at the proper time—the grounds of exception only occurred after the trial had concluded.   And viewing the report in the light of an award, or special verdict, the exceptions were filed in time. Tidd's Pract. 442; Ib. 762; 2 Wheat. Rep. 221. 228; Porter (Ala.) Rep. 218; 6 Smedes and Marshall's Rep. 218; 5 Wend. Rep. 102 and 520.

If the record shows an adjournment of the Court of Yuba, to hold a Court at ·Sutter, still it also shows *that the term of the Court at which this cause was tried, commenced on the very day which is certified in the record, to have been the day fixed for holding the Court in Sutter.*   As the time for holding the Court in Sutter county is fixed by the judge, any term commencing a week after the time so appointed must be irregular; but this should not be made the ground of vacating judgments, &c., had before the District Court in Yuba.

The respondents held the affirmative of the issues in the beginning, and it was by establishing the indebtedness of the appellants in the first place, that there was any basis of indebtedness from the respondents. The complaint of appellants commences with their indebtedness to respondents, and then sets up the other matters by way of set-off or recoupment.

The District Court properly refused to permit evidence to show the amount of rents "*which might have been received*" by Rowe from April 5th to October 1st, 1851, with ordinary care, &c. Because a mortgagee is not bound to exercise ordinary care and prudence in the management of mortgaged premises, and Rowe exhibited leases showing the *precise amount he actually received*. Coots on Mortgages, 152–3; Davy and Barker, 2 Atk. Rep. 2; 1 Vern. 45; Mad. Chan. 533 and 537.

The Court properly refused plaintiff's first instruction, because at the time this cause was tried, Marysville was not more than three years old; and it can hardly be said, that any custom had become so firmly established, as to govern the construction of contracts. But if so, still Rowe was not bound to let the premises on the most favourable terms—(see authorities last cited.) Was five months an unreasonable time to lease property?

The third instruction asked by plaintiff, even with the qualification of the Court, was too strong against defendants. A mortgagee is not even liable for the actual value of the mortgaged premises, but only for the amount of rents and profits received by him; and he is not required to use due diligence in procuring rents, &c., for the property. The only event in which he can be charged with more is, when he is guilty of *wilful default*. So long as he remains *passive* he can be chargeable with no neglect. (See last authorities.)

The effect of the qualification was nothing more nor less than to instruct the jury, to add the difference between the actual value of the property and what was received. Appellant was permitted to show what the property would have brought with due diligence. (See folio 414.) The jury could have drawn no other inference than that Rowe had rented for as much as the property was worth, as he at the time thought it his own.

The Court properly refused to recognise the sale to House as

it was sold for scrip. By the ruling of the Court, this lot is still in Field, and Rowe is responsible to House for the price of it.

The 5th instruction asked by plaintiff, was entirely abstract, and could have no bearing upon the case; argued as to 1st instruction asked by defendant; Chitty Plead.; Stephen on Plead.

As to the pretended tender of appellants to stop interest, the bare declaration contained in plaintiff's complaint upon which they urge the fact of tender, does not even approach the requisites of a legal tender. In setting up a tender to stop interest and costs, the party must prove himself ready and willing to pay, &c. A mere question as to how the accounts stood, will not be sufficient; and Field, so far from expressing himself ready to pay, &c., insisted that Rowe was in his debt. Gammon *v.* Stone, 1 Ves. Rep. 339; Johnson *v.* Batter, 4 Bibb, Ky. Rep. 97; Carley *v.* Varee, 17 Mass. Rep. 389, 392; Bacon *v.* Coon, 1 Meade's & Mor. Miss. Rep. 348.

As to the objections to the judgment as not cancelling the mortgages, this we say the judgment operates *per se*. But if not, then this Court, under sect. 8 of the Practice Act, can modify it by ordering the mortgages to be cancelled, &c.

HEYDENFELDT, Justice, delivered the opinion of the Court, in which MURRAY, Chief Justice, and ANDERSON, Justice, concurred.

Where a power of sale is contained in a mortgage, and under a sale by virtue of such power, the mortgagee becomes the purchaser, the equity of redemption still attaches to the property in favour of the mortgagor.

The Court below therefore treated this case properly as one in which the plaintiff's right to redeem was clear.

The errors complained of arise mainly upon the charges given and refused by the Court. The first three charges asked by the plaintiffs, were properly refused. The complainant does not charge the defendant Rowe with negligence or improper conduct in leasing the mortgaged premises. It requires him to account for the rent he actually received and no more. But even if he had been called on to answer a charge of that character, the instructions given by the Court were as favourable to the plaintiffs as the rules of law will admit.

The fourth charge was also properly refused; but the one given by the Court on the question embraced in it, was equally erroneous. The bill did not seek to set aside the sale made to House, and as Rowe had the power to sell, the sale must stand when the mortgagor does not complain of it.

As however the defendant Rowe did not affect the sale for money, but received instead an article of fluctuating value, he is clearly chargeable with the highest market value of the property sold, to be credited to the account of the plaintiff; and the Court erred in not so deciding.

The fifth instruction asked by the plaintiff, was also properly refused. It embraces a question which is entirely abstract, in reference to the facts of this case. It might arise hereafter between Field and the tenant, but can have no place in this decision.

The sixth instruction asked by the plaintiff, ought to have been given. Where a mortgagee takes possession of the mortgaged premises, his care and trouble are bestowed for the furtherance and protection of his own interests. He is not like a mere naked trustee, nor is his capacity that of an agent. He is, while in possession *quasi*, its owner. It is a charge which he has taken voluntarily upon himself, and for which he has no right to seek a compensation out of the mortgagor.

There is but one other error which it seems proper to notice. The Court decided that the defendants held the affirmative, and therefore gave them the opening and conclusion of the causes.

This was clearly wrong; the plaintiff, always in contemplation of law, has the affirmative, and has the right to open and conclude.

For the errors that have been pointed out, the judgment is reversed, and the cause remanded with costs.