[Civ. No. 3976.  First Appellate District, Division Two.—July 20, 1922.]

## THE PAVILION ICE RINK (a Corporation), Appellant, v. EDWARD F. BRYANT, Tax Collector, etc., et al., Respondents.

[1] POLICE POWER—CONDUCT OF DANCING PAVILION—REFUSAL TO RE-NEW PERMIT—ARBITRARY ACTION.—A board of police commissioners cannot arbitrarily and without any legal cause refuse to renew a permit to conduct a dancing pavilion upon premises which were leased for that purpose upon the faith of the permit theretofore granted.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge. Reversed.

The facts are stated in the opinion of the court.

H. J. Stafford, Edward A. Cunha and John T. Williams for Appellant.

George Lull and Chas. S. Peery for Respondents.

NOURSE, J.—Plaintiff filed its petition for a writ of mandate to require the defendant Bryant, as tax collector, to issue a license, and the other defendants, as members of the board of police commissioners, to issue a permit to continue the conduct of a dancing pavilion in the premises known as the "Winter Garden" and located on the corner of Pierce and Sutter Streets, San Francisco. A general demurrer to the petition was sustained without leave to amend and judgment followed denying the application and dismissing the proceeding.

The petition alleged that the plaintiff was in possession of the premises under a lease running until August 1, 1926; that on the first day of June, 1918, acting under the ordinances enacted by the board of supervisors, the police commissioners granted to petitioner a permit to conduct a

dancing pavilion in the premises, and that this permit had
been renewed without protest on each succeeding quarter
thereafter until January 1, 1921; that the commissioners
refused to renew the permit for the quarter commencing on
that day, giving as a reason therefor that the premises were
located in a residence district; that in truth and fact the
premises were not located in a residence district; that the
street on which the premises were located was a business
street; that the locality had not changed since the original
permit had been granted except that, since said time, it had
assumed more of a business character from day to day;
that in fact there was only one residence in the block in
which said premises were located, and the residents thereof
consented to the maintenance of said business; that the
declaration that the premises were located in a residence
district "was a sham and a pretense, and not based upon
the fact or the truth, all of which is and was well known
to the members of the said board, and that the said board
and the members thereof, well knew that the said district
surrounding the plaintiff's place of business, and the street
upon which it faces were, and are not a residence dis-
.trict, or a residence street, and in this behalf plaintiff
avers that said declaration was made for the purpose of
affording the said board and its members an excuse to arbi-
trarily, maliciously, oppressively, unreasonably and unlaw-
fully destroy plaintiff's business and impair plaintiff's con-
tract of lease, and to cause plaintiff great and irreparable
injury." It was further alleged that the refusal to renew
said permit was in deference to a protest filed with the
commissioners based upon a popular hue and cry against
the "Winter Garden" as a place where "Howard Street
Gangsters" met their victims, and that though the police
commissioners, after a hearing, affirmatively found that
those grounds of protest were untrue, they, nevertheless,
refused to issue the permit unless the protestants would
formally withdraw their protest; that when this was re-
fused, the police commissioners devised the pretense of de-
nying said permit on the ground that said premises were
in a residential district; that this action was arbitrary,
capricious, and unreasonable; that it discriminated against
plaintiff and in favor of other proprietors of similar
pavilions located in districts which are of a far more

residential character. Allegations followed relating to the character of the dancing conducted in the premises and the general conduct of the place. This, it was alleged, was without criticism. It was also alleged that plaintiff had expended large sums of money in fitting up its place of business for a dancing pavilion, and that it would suffer great injury if it was denied the right to continue it.

[1] From the allegations of the petition, it appears that, without any legal cause, but arbitrarily, oppressively, and capriciously, the board suddenly terminated plaintiff's right to conduct a lawful and profitable business upon premises which were leased for that purpose upon the faith of the permit theretofore granted.

It is not necessary to discuss the many constitutional questions argued by the parties. The right of the city to regulate a business of this nature may be conceded. The point of the case is that the petition alleges that the appellant was not subjected to regulation, but that it was arbitrarily and capriciously forced out of business while others in like situation and condition were permitted by the same authority to continue.

It is not necessary to cite authority to the point that a lawful business properly conducted and not injurious to persons, property, or public welfare cannot be confiscated by the arbitrary and capricious dictation of any official body. The complaint alleges that this was what was done in this case, and, of course, the demurrer admits the truth of these allegations.

Judgment reversed.

Sturtevant, J., and Langdon, P. J., concurred.