[Civ. No. 5872. Second Appellate District, Division Two.—March 22, 1930.]

A. G. MATTESON, Sr., Appellant, v. BOARD OF EDUCATION OF THE CITY OF LOS ANGELES, CALIFORNIA, Respondent.

A. G. Matteson, Sr., *in pro. per.*, for Appellant.

Everett W. Mattoon, County Counsel, and Ernest R. Purdum, Deputy County Counsel, for Respondent.

BURNELL, J., *pro tem.*—The appellant, appearing *in propria persona* throughout these proceedings, filed in the Superior Court a verified document entitled "Petition for Court Order," which, although obviously prepared without legal assistance, may be here regarded as it was in the court below, as a petition for a writ of mandate. Omitting most of the numerous conclusions of law stated in the petition it contains the following allegations of fact: Petitioner was employed by the respondent as a secondary grade teacher on September 1, 1912, and continued as such until his discharge "without cause" on June 30, 1919; at all times since the last-mentioned date he has "diligently sought reelection to and employment in" his position as a teacher, secondary grade, "as attested by" his life diploma entitling him to teach in all the "public educational institutions" in the state, but has been at all times refused and denied employment in any of the city schools although the respondent has admitted and still admits his "particular educational, technical and practical competency"; the respondent has refused to "restore and record" petitioner's name on the list of eligible teachers of the city of Los Angeles. The relief prayed for is an order directing the respondent to enroll petitioner's name upon the list of eligible teachers, secondary grade, "or appear and show cause" for its refusal to do so. To this petition the respondent interposed a demurrer alleging that the facts stated in the petition did not entitle the petitioner to any relief and that it appeared on the face of the petition that the action was barred by the provisions of section 338 of the Code of Civil Procedure. The demurrer having been sustained without leave to amend, the judgment was entered from which this appeal is taken.

The grounds upon which appellant urges a reversal of the judgment (and asks that we order the writ to issue) are the following, to wit:

1. That our laws do not permit the interposition of a demurrer to a petition for a writ of mandate, hence that

the so-called demurrer should have been treated merely as an unverified answer to a verified petition, thus entitling petitioner to a judgment on the pleadings;

2. That the form of the demurrer, regarded as such, was insufficient;

3. That the statute of limitations may not be set up by demurrer;

4. That the petitioner was by law entitled to the opening and closing arguments upon the hearing of the demurrer and that the court erred in permitting the county counsel, appearing for the respondent, to usurp that right;

5. That a teacher's "life diploma" empowers its holder to compel any school district he may select to employ him;

6. That petitioner's "federal rights" have been denied.

As to the first point, it is true that the chapter of the Code of Civil Procedure dealing with the writ of mandate (secs. 1084–1097) contains no direct provision for a demurrer to the petition, the only pleading on the part of the respondent specifically mentioned being an answer under oath, but it is likewise true that section 1109 of the same code provides that except as otherwise provided in that portion of the code relating to writs of review, mandate and prohibition the provisions of part two, which relate to the procedure in civil actions generally, "are applicable to and constitute the rules of practice in the proceedings mentioned in this title." The right of the respondent in a *mandamus* proceeding to test the legal sufficiency of the petition for a writ by demurrer thereto has always been recognized by the courts of this state. (16 Cal. Jur. 866; *Barber* v. *Mulford,* 117 Cal. 356 [49 Pac. 206]; *Metropolitan Life Ins. Co.* v. *Rolph,* 184 Cal. 557, 564 [194 Pac. 1005]; *Los Angeles City School Dist.* v. *Odell,* 200 Cal. 637 [254 Pac. 570]; *Bailey* v. *Security Trust Co.*, 34 Cal. App. 348 [167 Pac. 409]; *Pavilion Ice Rink* v. *Bryant,* 58 Cal. App. 584 [209 Pac. 76]; *Stewart* v. *Eaves,* 84 Cal. App. 312 [257 Pac. 917].)

In support of his contention as to the form of the demurrer appellant argues "that if same was incubated to perform the office of general demurrer, it is believed that the poetic euphony of same is only exceeded by the juridical nullity thereof, as the unity of expression of the statute and *not* inartificial, revolutionary poetic license, determines

with *equal* simplicity and exactitude, the correct form of the demurrer, and as waivable matter, the due form of the statute should not have been rejected to petitioner's embarrassment and prejudice for any vague substitute, despite its *el canto* cadence or poetic lure.

"It is as hazardous to encourage the peculiar and too prevalent impulse and urge of ultra Americans to evade or violate the settled forms of law by the native pale, pink pallor persuasion, as it is dangerous to temporize with the red, rancorous and revolutionary foreign variety, and it not only behooves all those posited in the forums of leadership to meticulously observe and follow the spirit of our laws, but to practice the same without abating one jot from the letter thereof, lest the somewhat delicate balance favoring law and order be reversed and liberate the pandemonium of Milton to the encouragement of a rampant, rapacious, bomb-throwing, revolutionary Moscow."

We find nothing in the record, nor is any authority cited to us, from which we may conclude that the dire results so graphically depicted by appellant will, as a necessary consequence, follow the county counsel's departure from the exact language of the code section. As for the foreign entanglements to which he alludes we can only say that the whole subject of the relations between this country and other nations is beyond our jurisdiction and rests entirely with the President and Congress. (U. S. Const., art. I, secs. 8, 10; art. II, sec. 2.)

The fact that the demurrer alleges "that the facts stated in said petition do not entitle the petitioner to the relief demanded or to any relief" instead of averring, in the language of section 430 of the Code of Civil Procedure, "that the complaint does not state facts sufficient to constitute a cause of action" is immaterial. The two statements mean exactly the same thing. The purpose of a general demurrer is to raise the issue as to the legal sufficiency of the facts plead, and for the purpose of the demurrer deemed true, to warrant the granting of relief to the pleader. That issue, which may be raised at any stage of the proceedings, even for the first time on appeal from the judgment (2 Cal. Jur. 257 and cases there cited) was squarely presented by the demurrer herein. Nor is there merit in the theory advanced by appellant that it

was incumbent upon the respondent to specify the particulars in which the petition was insufficient. It is the general rule "that no particular specification is required in a demurrer for want of facts." (*California Safe Deposit etc. Co.* v. *Sierra etc. Co.,* 158 Cal. 690 [Ann. Cas. 1912A, 729, 112 Pac. 274, 278]; *Kent* v. *Snyder,* 30 Cal. 666.)

That the bar of the statute of limitations may be set up by demurrer where the defect appears on the face of the petition or complaint is too well settled to warrant discussion. (*California Safe Deposit etc. Co.* v. *Sierra etc. Co., supra; Smith* v. *Richmond,* 19 Cal. 476; Sutherland's Code Pleading, sec. 323; 21 Cal. Jur. 107; 16 Cal. Jur. 606.)

Upon the point that most grievous error was committed by the court in permitting the county counsel to open the argument when the demurrer came on for hearing appellant's brief contains the following pertinent and persuasive argument:

"It is with dread and almost dismay that petitioner now approaches the trial; of which he is forced to relate events so strange and *ultra juris* as never yet heard of a *Coram judice* proceeding.

"On 31 May 27, at the trial hereof, defendant's counsel claimed and usurped petitioner's strict legal *right to open* and petitioner was forced to suffer this tyrannous pernicious, rapacious desecration and total but ephemeral subversion of the sacred dictums of the precepts of jurisprudence, namely '*Juris Praesepta Sunt Haec, honeste vivere, alturam non lacdere, suum cique. tribure,*' the greatest of which is that the law must hear before it decides, and it must hear the affirmative first.

"This precept of natural equity and justice was maintained through the absolutism of Feudal England by the great oracle of law, Sir Edward Coke, whom, upon being summoned before King Charles to answer why he, Coke, and his brother justices of Kings Bench opposed the prerogative of the King to decide causes between his subjects without hearing both, either or the affirmative sides first, answered the King, saying: Thus wrote Bracton, '*Rex non debet esse sub homine, sed sub Deo et lege*' (1 Campbell 393).

"Upon this oracular authority it is shown that despotic Kings of feudal times were prevented by the law of the land from accroaching the *right to open and be heard,* therefore

petitioner challenges adverse counsel for the county of Los Angeles to justify himself in arrogating this interdicted power to himself.

"To fully stigmatize such usurpation would possibly exhaust the volcanic, vitriolic invective of the peerless Sir Edward Coke himself, and as it is difficult to discuss this revolutionary act with moderation it is accounted for upon the ground that 'Man, proud man, dressed in a little brief authority, cuts such capers before high heaven as make the angels weep' Shake. . . . 'Measure for Measure.'

"Although county counsel procured thus, a great advantage, to the dire prejudice of Petitioner's legal rights, Petitioner contents himself with the knowledge that in contemplation of law such procedure is in contravention thereof and is therefore open and now is subjected to review, without rancor or malice as Petitioner has ever practiced and taught moderation and has met all past, and will meet all prospective assaults on law and order and the abuse thereof with all expedient and expeditious consideration, with patient but adamantine opposition, as the heirophants [*sic*] of history agree that a multitude of ignorant men will ruin the courts, '*Multitudo imperitorum perdit curiam*' (*Commonwealth* v. *Roby,* 12 Pick. (Mass.) 496) and that thereafter juridical anarchy may reign until the foundation of society dissolve.

"Indifference, ignorance or disrespect for the law of the land and the due process thereof has commanded just rebuke, which has heretofore been pronounced by this High Court respecting the *right to open 'The plaintiff, always in contemplation of law, has the affirmative and has the right to open and conclude'* (*Benham* v. *Rowe,* 2 Cal. 387 [56 Am. Dec. 342]) applying '*Audi alteram partem*' (*Windsor* v. *McVeigh,* 93 U. S. 274 [23 L. Ed. 914, see, also, Rose's U. S. Notes])."

While we have the greatest respect for the authorities above quoted, we feel that appellant must continue, unaided by this court, to practice those principles of Christian fortitude and forbearance his addiction to which is admitted by his brief, since the demurring party under our practice always has the right to open and close the argument on the demurrer.

It is appellant's theory that his "federal rights," as well as his rights under the Constitution of this state, were violated by the denial of "his lawful right to present and argue his petition and motion for judgment on the pleadings as such denial rendered the proceeding *coram non judice,* without the pale of law, in excess of the court's jurisdiction and violative of due process of law and the state and United States Constitution. (Const. of Cal., art. IV, secs. 2, 11, 21, 23; Const. of U. S., 14th amendment.)" Examining those provisions of our own Constitution which appellant cites as having been violated by the action of the court, we find that section 2 of article IV provides for biennial and bifurcated sessions of the legislature, section 11 of the same article relates to legislative immunity from arrest, section 21 to ineligibility for public office by reason of conviction of certain crimes, and section 23 to the salaries of members of the legislature. We are unable to discover in what manner any right of appellant under any of these provisions has been affected. Nor do we find that there has been any denial of due process of law to appellant or any abridgment of his privileges or immunities by reason of any of the matters appearing in the record. No such procedure as a motion for judgment on the pleadings prior to the filing of an answer is known to our law. Appellant, in preparing and presenting such a motion very evidently labored under the mistaken theory that the demurrer should be regarded as an unverified answer which failed to put in issue the material averments of his petition.

Consideration of the sufficiency of the facts set forth in the petition to warrant the relief sought involves a discussion of appellant's contention as to the effect of his possession of a life diploma. Section 1696 of the Political Code, on which appellant relies as requiring the recordation of such diplomas, has to do with the duties of teachers. The first subdivision of the section requires a teacher, "before assuming charge of a school" to "file his or her certificate *with the superintendent of schools*" with the proviso that "*when any teacher so employed*" holds "an educational or a life diploma of California, upon presentation thereof *to the superintendent* he shall record the name of said holder in a book provided for that purpose in his office, and the

holder of said diploma shall thereupon be absolved from the provisions of this subdivision.'' (Italics ours.) It is obvious that the provision from which the holder of such a diploma may be absolved is that requiring him to file his certificate with the superintendent before assuming charge of a school in which he has actually been employed as a teacher. Most certainly it cannot be construed as conferring the right on the holder of such a diploma to pick out any school in the state, regardless of whether or not there is a vacancy therein and demand that he be there employed. ''The power to employ teachers is given to city boards of education by section 1617 of the Political Code, which, as was said in *Kennedy* v. *Board of Education,* 82 Cal. 483 [22 Pac. 1042], 'confers upon boards of education unlimited power to employ teachers.' '' (*Bradley* v. *Board of Education,* 1 Cal. App. 212 [81 Pac. 1036, 1037].) ''It has been uniformly held in this state that, in the absence of a constitutional or statutory limitation, boards of education may exercise an unlimited discretion in the employment and dismissal of teachers, as well as in their transfer and assignment.'' (*Loehr* v. *Board of Education,* 12 Cal. App. 671 [108 Pac. 325, 327].) ''Here the right of removal stands alone; and it has been uniformly held in this state that boards of education may exercise an unlimited discretion in the employment and dismissal of teachers under like employment with appellant.'' (*Catania* v. *Board of Education,* 37 Cal. App. 593, at 597 [174 Pac. 332, 334].)

While these cases are no longer authorities on the power to *discharge,* on account of the amendments passed to section 1609 introducing teachers' tenure, there have been no statutory amendments imposing any restrictions upon the unlimited discretion vested in the board to *employ* whatever qualified person it may select. In another case somewhat analogous in principle it is said: ''This is a proceeding in mandate to compel the board of education of the city of San Bernardino school district to prefer the plaintiff for appointment and employment as a janitor of the high school building of said city, and to retain and continue him as such, under an act of the legislature, approved March 31, 1891, he being an honorably discharged ex-Union soldier of the war of the Rebellion. . . . The petitioner was employed for the period of one year as janitor,

and a few days prior to the expiration of the term was discharged and another party appointed to the place. After the expiration of the year he began this proceeding. A demurrer was sustained to the petition, and this appeal was taken from the judgment entered thereon. . . . If a man filling the demands set forth in the act of the legislature has the preference, then this petitioner does not show but there are hundreds of men possessing the qualifications that he possesses who are ready and willing and anxious to be employed as janitor by this board of education. If there be other ex-Union soldiers equally qualified with petitioner, he has no absolute right to the place and the board cannot be compelled by mandate to appoint him. In other words, he would only be entitled to the writ upon a showing made that he was the only man coming within the provisions of the act who was desirous of the appointment. The petition before us entirely fails to make such a showing." (*Allison* v. *Board of Education,* 125 Cal. 72 [57 Pac. 673].)

Another fatal defect in the petition is that the county superintendent of Los Angeles County was not made a party. The duty of recording the name of the holder of a life diploma, where under section 1696 of the Political Code such holder is entitled to such recordation, devolves by the terms of that section upon the superintendent, not upon the city board of education; which is the only party named as respondent in the petition herein.

It further appears from the life diploma, a copy of which is attached to the petition as an exhibit, that the same was issued to appellant October 1, 1919. His petition alleges that "defendants' mistaken, wrongful and unlawful refusal to recognize and give due respect and effect to the authority of" his life diploma has continued ever since his discharge in 1919. His petition in this proceeding was filed in May, 1927, approximately eight and a half years after the dates of his diploma and of his discharge. His right of action, if he ever had any, was barred by limitation. (*Harby* v. *Board of Education,* 2 Cal. App. 418 [83 Pac. 1081]; *Kramer* v. *Board of Police Commrs.,* 39 Cal. App. 396 [179 Pac. 216]; *Barber* v. *Mulford,* 117 Cal. 356 [49 Pac. 206.)

The petition failed to state facts sufficient to warrant any relief and the demurrer was rightly sustained.

Judgment affirmed.

Works, P. J., and Craig, J., concurred.