[Civ. No. 4964. Second Appellate District, Division Two.—July 1, 1927.]

PAUL E. STEWART, City Superintendent of Schools, etc., Respondent, v. ALBERT T. EAVES, as County Auditor, etc., Appellant.

Clarence C. Ward and Atwell Westwick for Appellant.

Schauer & Ryon, Cushing & Cushing and Delger Trowbridge for Respondent.

MURPHEY, J., *pro tem.*—This is an appeal by the defendant, county auditor of Santa Barbara County, from a judgment of the superior court granting a writ of *mandamus* to plaintiff and directing the auditor to draw his warrants in favor of the respondent as city superintendent of schools of the city of Santa Barbara for the sum of $466.66 as salary for the months of November and December, 1923. On July 10, 1917, A. C. Olney was employed as such city superintendent for a four-year term at $3,500 per annum. On the 23d of January, 1919, Olney resigned, his resignation to be effective on January 31st, and the respondent herein was employed as city superintendent, to take effect February 1, 1919. On May 31st of the same year respondent's salary was fixed at $4,000 per annum, effective July 1, 1919; on June 3, 1920, the respondent resigned as such city superintendent, his resignation to be effective June 30th of that year, which resignation was regularly accepted, and on the same day the respondent was employed by the board of education for a full term of $5,000 per year, effective on the first day of July, 1920. On June 7, 1923, respondent again resigned as city superintendent of schools, to take effect June 30th of that year, and on the same day was employed as such superintendent for a four-year term at a salary of $5,600 per annum, commencing on the first day of July.

The city superintendent of schools of the city of Santa Barbara is appointed by the joint action of the high school board and the board of education of the Santa Barbara school district, the membership of the two boards being identical in personnel. On January 29, 1924, orders were duly drawn by the proper official of the board of education for the salary of respondent at the rate of $5,600 per

year for the months of November and December, 1923; they were regularly countersigned in the manner required by law by the county superintendent of schools and were presented to the appellant herein as county auditor of the county of Santa Barbara, with the request that he draw his warrants thereon in the manner provided by law for the payment of said salary to the respondent, which he refused to do and still refuses so to do.

This action was brought to compel the performance of that duty. The city superintendent of schools is elected under section 1793, subdivision 2, of the Political Code, reading as follows: "City Superintendents of public schools, elected by city boards of education, shall be elected for a term of four years and said city boards of education shall have full power to fix the salary of all employees." Section 1609 of the Political Code provides as follows: "Boards of school trustees and city boards of education shall have power, and it shall be their duty; . . . In each city school district governed by a city board of education, such board may employ a city superintendent of schools, . . . " Section 1726 of the Political Code provides: "In every high-school district formed and existing in an incorporated city or town or in a single school district, the board of education or board of school trustees of such incorporated city or town or school district shall constitute the high-school board, and shall have the management and control of the high school in said district. . . . " Section 1741 of the Political Code provides as follows: "Except as in this article, or in article XV of this chapter, otherwise provided, the powers and duties of high-school boards shall be such as are now or may hereafter be assigned by law to boards of education or boards of school trustees in school districts." Section 56 of the charter of the city of Santa Barbara provides: "The Board of Education shall have the entire control and management of the public schools in the City in accordance with the Constitution and general laws of the State, and is hereby vested with all the powers and charged with all the duties of such control and management."

The appellant contends: First, that the court erred in overruling the demurrer of defendant to plaintiff's petition for writ of mandate; second, that the evidence does not support the finding contained in paragraph 16 of the decision that the allegations in paragraph 7 of defendant's

second defense are untrue; third, that the evidence does not support the finding in paragraph 17 of the decision that the allegations in the defendant's third defense are untrue; fourth, that the plaintiff is a public officer and that his compensation could not be increased after his election or during his term of office; fifth, that the board of education had no power or authority to cancel the contract entered into between said board of education and said Paul E. Stewart on the third day of June, 1920, or to enter into the contract of June 7, 1923, for the performance of the same duties as covered by the contract of June 3, 1920, or to allow extra compensation therefor while the terms and conditions of the contract of June 3, 1920, yet remained to be kept and performed.

Taken in the order in which they are assigned in support of his contention that the demurrer to the petition should have been sustained, defendant cites the case of *Cook* v. *Reid*, 39 Cal. App. 453 [183 Pac. 820]. In that case the complaint is in substance as follows: "The plaintiff is, and at all times named in the complaint he was, the owner and holder of a certain order and requisition of the Rannell's School District, County of Riverside, dated May 11, 1916, payable to W. H. Cook or order, for the sum of $75.00 from the school fund of said district, and signed by two trustees of said district on that date. On June 30, 1916, the plaintiff presented said order to the superintendent of schools of the county of Riverside, who thereupon duly examined and approved the same in writing by indorsing upon said order: 'Examined and approved, numbered as above, June 30, 1916,' and affixed his signature thereto as county superintendent of schools and thereupon drew said requisition on said auditor as such. On the sixth day of September, 1916, the plaintiff presented said requisition to the defendant as auditor of said county at his office; thereupon the defendant refused to allow and indorse the same and refused to draw his warrant in favor of the plaintiff for the amount stated in the order and requisition, although sufficient funds are available therefor." The court said in that case: "In such cases where the official duty involved is discretionary, the burden is upon the petitioner. In the present action, petitioner's complaint does not show what service or other consideration is

the foundation of his claim, and does not allege any fact from which an abuse of discretion can be inferred.'' It will be observed that there is not a word in the complaint as to the character of the service performed or material furnished, and no allegation that any services were performed or rendered, notwithstanding that section 1700 of the Political Code provides that no warrant must be drawn in favor of any teacher, unless the officer whose duty it is to draw such warrant is satisfied that the teacher has faithfully performed all the duties prescribed in section 1696. In the instant case no such condition exists. The complaint specifically sets forth the services that have been performed by the respondent, as well as do the requisitions drawn by the county school superintendent, which were presented to the auditor and which were and are made a part of the complaint in this action. The allegations of the complaint are certain and specific and set forth all the facts necessary to constitute a complete cause of action, and upon their face show that the petitioner is entitled to the amounts set forth in the requisition. Under these circumstances the case of *Wood* v. *Strother*, 76 Cal. 545 [9 Am. St. Rep. 249, 18 Pac. 766], which was an action in *mandamus* arising under the San Francisco charter wherein it was made the duty of the county auditor to examine the contract ''the steps taken previous thereto and the record of assessments and must be satisfied that the proceedings have been legal and fair.'' In that case the court said: ''In our opinion the true tests are whether its (referring to the Auditor) determination is intended by law to be final, and if not whether there is any other 'plain, speedy and adequate remedy.' If the determination of the tribunal (The Auditor) was intended to be final, it is plain that it cannot be disturbed either on *mandamus* or in any other way. If it was not intended to be final, but there is another 'plain, speedy and adequate remedy' the writ cannot issue; for it was not designated to usurp the place of other remedies. But if the determination was not intended to be final and there is no other adequate remedy, the writ must issue. . . . In the present case there can be no doubt that the auditor was to examine the proceedings, and satisfy himself that they were legal, for the statute expressly says so; and if they were found by the court to be illegal the

writ could not issue. But, being perfectly legal, the question is whether the determination of the auditor was intended to be final; and we can see no ground for saying that it was. There is nothing in the language of the act which shows that it was intended to be final. It certainly would not be final in favor of the contractor. In the numerous cases in which street assessments have been before the court we have never seen it suggested that the signature of the auditor cured previous illegality, and its seems clear that it would not do so. Why, then, should it be final against the contractor, and be conclusive that the proceedings are illegal, when it is apparent that they are not so? . . . If the determination of the auditor be not final, then, upon the principles above stated, the writ must issue.'' It is significant that the powers and discretion of the auditor under the San Francisco charter are much broader than under the statute. Under the statute he shall sign the warrant in case he allows said demand. (Stats. 1905, p. 528.) Under the city charter he is burdened with specific responsibilities of investigation which he may not avoid performing. ██ The writ has been repeatedly issued in cases of this character, and where, as in the instant case, the irregularities, if existing, do not appear on the face of the complaint, the procedure is undoubtedly warranted and proper. The appellant alleges that the auditor was in a position which enabled him to familiarize himself with the proceedings leading up to the contract executed on the fifteenth day of June, 1923. ██ This may be true, but nevertheless by the demurrer the facts are admitted as stated in the petition of the respondent and it necessarily devolves upon the court to determine the ultimate fact as to the legality of these proceedings.

██ Appellant's second contention is that the evidence does not support the finding contained in paragraph 16 of the decision of the court declaring the allegations of paragraph 7 of defendant's second defense to be untrue. The first allegation that the contract of employment of respondent for the sum of $5,600 per annum, commencing July 1st, is wholly void in law and illegal, is a pure conclusion of law and the second allegation that said contract is void because at the time of its execution respondent was serving as a city superintendent of schools of the city of

Santa Barbara under a valid, subsisting, and unrevoked contract, is also a conclusion of law, and the remaining allegation, to wit, that on June 7th, 1923, the city superintendent attempted to resign as superintendent of schools and rescind said valid, subsisting, and unrevoked contract, is a mixed allegation of fact and law; and the allegation that petitioner attempted to resign under an express understanding of the board of education that he would be immediately re-employed by said board of education as said city superintendent of schools at an increased salary, and that a new, separate, and distinct contract would be executed by and between said board of education and petitioner, is untrue, is fully supported by the evidence produced at the trial. The remaining allegation in that paragraph, as well as the allegations contained in the third separate defense, consist of a narration of facts concerning the several appointments and resignation and increases of salary of the respondent, the legality of which is the very issue involved in this litigation, and if the conclusion at which we have arrived in this case is correct and the board of education of the city of Santa Barbara was authorized by law to do the things that they did do, these allegations become immaterial.

The next in order, of the contentions of the appellant, is that the plaintiff is a public officer and that as such his compensation could not be increased after his election or during his term of office, and in this respect, appellant relies upon section 9, article XI of the constitution, which reads as follows: ''The compensation of any county, city, town or municipal officer shall not be increased after his election or during his term of office; nor shall the term of any such officer be extended beyond the period for which he is elected or appointed.'' The question as to whether a city superintendent of schools is a public officer has never been directly determined in this state. It would seem from the wording of section 1793 of the Political Code, on its face, that it was the conclusion and determination of the legislature that a city superintendent was not a public officer, but simply an employee. Section 2 of that section provides: ''City Superintendents of public schools, elected by city boards of education, shall be elected for a term of four years, and said city boards of education shall have

full power to fix the salary *of all employees.*'' (Italics ours.) In the case of *San Diego* v. *Dauer,* 97 Cal. 444 [32 Pac. 561], it is assumed, and that assumption has never been questioned or contradicted, that a city superintendent of schools is an employee and not a public officer. The law as hereinbefore set out with respect to the powers and duties of the boards of education, and contained in sections 1609–1741 of the Political Code, and section 56 of the Santa Barbara charter, is comprehensive and would appear to eliminate the vesting of any statutory or charter powers in the city superintendent. His duties apparently are entirely ministerial and not outlined or enumerated by any law; he is not required to give any bond for the faithful performance of his duties nor take any oath of office. The only provision of the law which is usually incident to a public officer, and which governs in the appointment of a city superintendent, is the section of the Political Code fixing a four-year term of office, which section, however, does not fix any specific time either for the beginning or termination of that term. In the absence of any charter provision or statutory law defining the duties of a city superintendent it may be fairly deduced that neither the state nor the municipality intended to vest this officer with any of the sovereign powers of the state or municipality, except such as are directed by the employing power which, under the statute and the charter, have complete control and government of the city schools. We have found nothing in the statutes nor in the municipal charters, nor in the decisions of the higher courts of this state that define the official status of a city school superintendent. As before indicated, in the case of *San Diego* v. *Dauer, supra,* the supreme court said, ''Assuming therefore, that the superintendent of schools of the city of San Diego is an employee of the board of education of that city,'' which assumption has been the prevailing opinion with respect to that matter for thirty-four years and has been and still is being acted upon with the acquiescence of the legislative departments of the state and by every day practical application in the civil municipalities, it would seem that we have reached a stage in this state with respect to city superintendents of schools where it must be held that the legislature has conclusively determined in sections 1609 and 1793 of the Political Code

that these officers are employees and not public officers, otherwise the delegation of power by that body to municipalities to fix such salaries is unwarranted and illegal. In *Smith* v. *Mathews*, 155 Cal. 752 [103 Pac. 199], the supreme court, speaking through Mr. Justice Beatty, said: "When the right to enact a law depends upon the existence of a fact the passage of the act implies, and the conclusive presumption is, that the governor and the legislature have performed their duty, and ascertained the existence of the fact before enacting or approving the law—a decision which the courts have no right to question or review." The law in other states with respect to this subject matter is clearly defined in *Farley* v. *Board of Education, City of Perry*, 62 Okl. 181 [162 Pac. 797]. The supreme court of Oklahoma there said: "A public officer is one whose duties are fixed by law and who in the discharge of the same knows no guide but established laws. Employment arising out of the contract whereby the person employed acts under the direction or control of others, and which employment depends for its duration and extent upon such a contract, is not an office." In *Olmstead* v. *City of New York*, 42 N. Y. Super. Ct. 481 the court says: "A person 'who receives no certificate of appointment, takes no oath of office, has no term or tenure of office, discharges no duties, and exercises no powers depending directly on the authority of law, but simply performs such duties as are required of him by the persons employing him, and whose responsibility is limited to them, is not an officer and does not hold an office . . . although the persons so employing him are public officers, and his employment is in and about a public work or business.'" In *State* v. *Spaulding*, 102 Iowa, 639 [72 N. W. 288], the supreme court said: "When such appointment is provided for or required by law, which fixes their powers and duties, and they are required to take an oath; and to give bonds, they are usually considered public officers; but where a deputy is appointed, merely at the will and pleasure of his principal, to serve some purpose of the latter, he is not a public officer, but a mere servant or agent. . . . So a 'position the duties of which are undefined, and which can be changed at the will of the superior' . . . is not an office, but a mere employment, and the incumbent is not an officer, but a mere employee." An illuminating case cover-

ing substantially all the questions involved in this action is found in *Ward* v. *Board of Education,* 11 Ohio Cir. Rep., p. 671. It may be stated that the statute law with respect to the matters there involved does not materially differ from our own law. The court says: "Each Board of Education shall have the management and control of the public schools of the district with full power to appoint a superintendent and assistant superintendents of the schools etc. . . . The general assembly, in cases not provided for in this constitution, shall fix the term of office and the compensation of all officers; but no change therein shall affect the salary of any officer during his existing term, unless the office be abolished. . . . A majority of the board of education shall constitute a quorum for the transaction of business; upon a motion to adopt a resolution . . . to employ a superintendent, teacher etc. . . . Taking the statute and the averments together, we believe that Ward as superintendent was not an officer, but was an employee."

Assuming that the foregoing discussion leads to the logical conclusion that the city superintendent of schools is an employee and not a public officer we come to the final question as to whether such employee and his employer—the board of education—may within the purview of the law, rescind an existing contract by mutual consent? In the case last above cited the Ohio circuit court says, speaking of a contract between the board of education and the city superintendent, "Such contract entered into between the teacher and the board of education is subject to the general rules governing the validity of contracts." In volume 35 of Cyc., page 957, we find the following: "except in so far as governed by special statutes the making, requisites and validity of contracts by school districts are governed by the rules applicable to contracts generally." Further, in the same volume, at page 965, the following language is used: "the modification or rescission of a school district contract must ordinarily be made in the manner in which the execution must have been made." There are several cases in which the supreme court of this state has sanctioned the modification and termination of contracts with boards of education, notably: *Harris* v. *Central High School Dist.,* 45 Cal. App. 669 [188 Pac. 617], *West* v. *Pasadena,* 43 Cal. App. 199 [184 Pac. 877], and *Armstrong*

v. *Vallejo,* 173 Cal. 217 [160 Pac. 414]. Appellant relies upon the case of *California Highway Commission* v. *Riley,* 192 Cal. 97 [218 Pac. 579]. In that case the real crux of the action centered around the question as to whether the highway commission was authorized by law to breach a contract and make a gift to a contractor as a basis for the extinguishment of an existing and operating contract. The supreme court held that in view of the powers vested in the highway commission by the several legislative acts creating it, it had no such power, the commission, by the terms of the creating acts having been granted specific authority as agent of the state to enter into contracts, but given no corresponding power to breach them, and as we understand the decision, its application is limited to the conditions and status developed in that particular case, and that it was not its purpose to run counter to the doctrine announced in the long line of cases in this and other jurisdictions which may be said to be crystallized in the language to be found in section 1112 of Bigelow on Estoppel, wherein it is said: "But it is a well-settled principle, applicable alike to states or the United States, that whenever a government descends from the plane of sovereignty and contracts with parties, such government is regarded as a private person itself and is bound accordingly. . . . A state in its contracts with individuals must be judged and must abide by the same rules which govern similar cases between individuals; and, whenever such a contract comes before the courts, the rights and obligations of the contracting parties will be adjudged upon the same principles as if both contracting parties were private persons." Chief Justice Myers, in the Riley case, states that to warrant the state agent in breaching a contract he must be vested with authority to do so by the express grant or clear implication, and he finds neither to exist in the language contained in the acts creating the highway commission. Under the charter of the city of Santa Barbara, approved by the legislature, the board of education is clothed with the entire control and management of the public schools in the city in accordance with the constitution and general laws of the state, and "is hereby vested with all the powers and charged with all the duties of such control and management." Certainly under this language there is no limitation and

nothing is left to depend upon implication. If the board has full power in the management and control of the school it must be vested with the power to make contracts and unmake contracts. ▮ It is the contention of appellant that to permit the board of education to accept the resignation of a city superintendent of schools during the time for which he was appointed would nullify the effect of section 1793 of the Political Code. Such is not the effect. When in the judgment of the board of education it is for the best interests of the schools under their control and management to accept the resignation of an employee, such termination in nowise disturbs the requirements of that section. It must be remembered that section 1793 provides no specific time for the commencement or ending of the term. Consequently any person elected to succeed a retiring employee will be elected for a full four-year term. In the Armstrong case, *supra*, the supreme court has recognized the power of the board of education to employ a city superintendent notwithstanding the provisions of section 1793 of the Political Code for a temporary term, and this upon a verbal understanding between the employee and the board that such were the terms of his employment. If it is the intention of the legislative power of the state, the county, or the city, to deny boards of education the power to do the things that were done in the instant case, it devolves upon that branch of the government to make that purpose clear in the statute law. In this case there is no element of bad faith or ethics involved. The evidence before the court shows that the respondent had no agreement or understanding with the board of education when tendering his resignation that he would be appointed to succeed himself. It is disclosed in the record that it had come to the knowledge of the board that the services of the respondent were in demand in another city and at a salary double that paid him in the city of Santa Barbara. Of their own volition and knowledge, and for what the boards considered the best interests of the schools of that city, the resignation and subsequent appointments were brought about.

If we are correct in the foregoing discussion it becomes unnecessary to consider other points raised by the respondent to the effect that even if the petitioner is a public officer he is not a city, town, or municipal officer within the

meaning of section 9, article XI of the constitution; nor that the term follows the man and not the office where the commencement and ending of the term are not vested by statute. These are interesting questions, on which we express no opinion, as a discussion of them would unnecessarily greatly enlarge the scope of this opinion.

Judgment is affirmed.

Works, P. J., and Craig, J., concurred.