[Civ. No. 18704.   Second Dist., Div. Three.   May 14, 1952.]

EDWARD A. SHARPE, Respondent, v. ARABIAN AMERICAN OIL COMPANY, Appellant.

Lawler, Felix & Hall for Appellant.

William P. Crawford and Charles J. Colden for Respondent.

SHINN, P. J.—Plaintiff was employed in California for a minimum of 24 months' service as tugboat captain in Saudi Arabia, or any other foreign locality to which he might be transferred. His services were rendered as tugboat captain from November 22, 1948 to January 31, 1949, when he was promoted to pilot, in which capacity he served until he voluntarily resigned May 10, 1949. He received monthly pay of $495 as tugboat captain and $520 as pilot and, in addition, lodging and meals. Upon his return to California he brought this action claiming that under his contract of employment eight hours constituted a full day's work, that he had remained on duty (including time when he was "on call"

or on "standby"), and therefore had worked 24 hours a day, during the term of his employment, and had put in overtime of 16 hours each working day, which totaled 1,232 hours as tugboat captain and 952 hours as pilot. As tugboat captain plaintiff lived on the ship and was available for duty 24 hours per day, seven days per week. As one of six pilots he was required to report in 20 minutes while "on call," and to report in one hour when on "standby." He was "on call" 24 hours, on "standby" the next 24 hours and "off duty" the third 24 hours. He sought additional pay at the rate of $2.372 per hour as captain and $2.492 per hour as pilot for the alleged overtime. Findings were in his favor and he had judgment for $2,922.30 with interest from January 31, 1949, and $2,372.34 with interest from May 5, 1949. Defendant appeals.

The facts of the case are not in dispute. The controversy involves nothing more than an interpretation of the written agreement under which plaintiff was employed and rendered his services, and a definition of the rights and duties of the parties thereunder. The controlling paragraph reads as follows: "Your salary will be U.S. $450.00 a month, effective Oct. 10, 1948, which salary shall not be reduced during your current Tour of Foreign Duty. However, in the event you fail to work an eight-hour day, six-day week, your pay may be reduced proportionately to the number of lost hours or days in a month, provided such loss is not caused by illness, accident, or other causes beyond your control."

Plaintiff contends that eight hours constituted a workday, that everything over eight hours was overtime, that he was working 24 hours a day because he was "on call" or "on standby" when he was not actually working, that the agreement calls for pay for all overtime, and that the rate of pay was to be based upon the yearly wage reduced to an hourly rate. The trial court agreed with these contentions. Plaintiff did not allege or attempt to prove that he worked more than eight hours per day, exclusive of the hours he was merely "on call" or "on standby."

It is not contended by plaintiff that these various agreements are expressed in the writing. He states his theory in these words: "Implicit in the express provision for proportionate reduction of pay is a provision for increased pay proportionate to the number of overtime hours. It is simply a question of *reciprocity* based on *reasonable expectation.*" He also relies upon certain evidence which he claims proved

there was a general custom under which tugboat captains and pilots are paid time, or time and a half, for hours they work in excess of eight hours per day. This custom, he contends, supplies whatever is needed to justify his version of the agreement.

Plaintiff has not cited any statutory or case law which supports his position and we doubt that any can be found. ■ An agreement that if an employee works less than eight hours a day, six days a week, his pay will be reduced proportionately, is not an agreement that if he works more than eight hours a day his monthly salary will be increased proportionately. Neither is it an agreement that when he has worked eight hours his day's work is done and he may discontinue what he is doing, whether or not it is completed. These are matters to be arranged and stated in the agreement of employment if the parties have considered them and reached an understanding.

■ If the parties have omitted from the agreement something that was so clearly a part of their understanding that the agreement would be unworkable without it, and which would have been incorporated without question if either party had requested it, the missing stipulation will be implied as a part of the agreement. ■ But before this may be done justification, and the necessity for it, must be found in the agreement. ■ Nothing may be added by way of implication except that which is necessary to carry out the intentions of the parties, as derived from the agreement itself and not merely from the circumstances under which it was made. ■ If the agreement, as written, is complete as to the matters which it purports to cover, and is workable, the court will not read into it any stipulation which would add to or detract from the respective burdens or privileges the parties have declared to be their agreement. ■ And, in the construction of such an agreement it will be conclusively presumed that it expresses their entire understanding. These principles have been expounded too often to require further discussion. (*Foley* v. *Euless*, 214 Cal. 506 [6 P.2d 956]; *Stockton Dry Goods Co.* v. *Girsh*, 36 Cal.2d 677 [277 P.2d 1, 22 A.L.R.2d 1460]; *Cousins Inv. Co.* v. *Hastings Clothing Co.*, 45 Cal.App.2d 141 [113 P.2d 878]; *United States B. & L. Assn.* v. *Salisbury*, 217 Cal. 35 [17 P.2d 140]; *Gero* v. *Richey*, 38 Cal.App. 21 [175 P. 91]; *Withers* v. *Moore*, 140 Cal. 591-597 [74 P. 159]; *Sickelco* v. *Union Pac. R. Co.*, (9th Cir.) 111 F.2d 746.)

The agreement is utterly silent as to all the matters which plaintiff says should be implied. No claim is made that the parties had any understanding that was not expressed in the agreement nor that plaintiff misunderstood what it said or what it meant. If we should accept the theory upon which plaintiff's action is predicated it would mean that plaintiff was employed at a salary of $1,485 per month to run a tugboat, and $1,560 per month to act as pilot, in addition to board and lodging. There is nothing in the agreement which suggests that the parties had any such intentions. Plaintiff's duties as tugboat captain required him to assist in the docking of tankers and freighters as they came into and left the dock at Ras Tanura. The tug towed barges and pile drivers, served as a fireboat and was used in many miscellaneous activities. Plaintiff was an experienced seafaring man. He contracted to furnish his services without any agreement as to the maximum number of hours per day he might have to remain "on call" or "on standby" when not actually on duty, and whether he would be entitled to pay for overtime while actually working or while he was "on call" or "on standby." We can conceive of no reason for believing that defendant, in preparing the contract, did not incorporate everything that was necessary to express its understanding of the terms of plaintiff's employment. It made no representation or promise to plaintiff that he would not have to be available for duty more than eight hours per day. Even if it be assumed that plaintiff believed he would be free of all responsibility 16 hours out of every 24, or was under a misapprehension as to other conditions he would encounter in Saudi Arabia, this would not have a bearing upon the proper interpretation of the agreement. The fact that he discovered he had made what he considered to be a bad bargain does not entitle him to be given a better one by the court. Defendant stated the terms of its offer and plaintiff accepted them. It would be in excess of its authority for the court to attempt to make a new contract by adding all or any of the conditions which are the basis of plaintiff's claims. It is too clear for argument that there is nothing in the agreement to suggest that defendant would have agreed to any of those conditions if plaintiff had suggested them. The interpretation placed upon the agreement was clearly erroneous. It is complete as to all the conditions of plaintiff's employment to which it relates. Other matters which were intentionally omitted may not be added under the guise of interpretation. By its judg-

ment the trial court did not interpret the contract in such a manner as to carry out the intentions of the parties; it attempted to make a new contract. If it had been the mutual intention of the parties that plaintiff would be paid overtime for 16 hours out of 24, because some service might be required of him while he was off active duty, he would doubtless still be working for the company as a pilot at $18,000 a year, plus board and lodging, provided he had not retired upon his savings.

■ Plaintiff testified over objection that he was familiar with shipping operations in the harbors of the major ports of this country and in a majority of harbors all over the world, and with the rate of pay and compensation of tugboat masters and pilots and with tugboat operations in Los Angeles Harbor and Long Beach Harbor. In answer to a question what was the usage and custom as to the manner of pay of tugboat operators in Los Angeles Harbor he answered, over objection, that at Long Beach Harbor "You were paid for the amount of excess hours you put in over the stipulated number of hours that you were supposed to work. . . . Overtime was based on your hourly rate, . . . and you would be paid overtime at your straight hourly rate. In some instances, however, the same rule applied that in certain kinds of work that you were paid what is called time and a half, that is your straight hourly rate plus half your straight hourly rate, which was called time and a half, as overtime."

Defendant's objection, upon numerous grounds, should have been sustained. Evidence of usage is never admissible except as an instrument of interpretation. (Code Civ. Proc., § 1870, subd. 12.)

Under the rules previously stated, in the interpretation of an unambiguous contract, conditions may be read into it which are necessary to carry out the expressed intentions of the parties and which they clearly took for granted without their being stated. ■ Consistently with this rule, evidence of usage and custom may be received as a means of interpretation if it is shown that it was of such general and universal application that the parties may be conclusively presumed to have known of it. In *Pastorino* v. *Greene Brothers*, 90 Cal.App.2d 841 [204 P.2d 368], it was held that evidence was admissible to prove custom or usage "followed by all of the people in the fishing business" and "of universal application to all those engaged in the commercial fishing industry," under which the captain of a boat has complete control of its movements

during a fishing venture. Plaintiff endeavored to bring himself within this rule. He failed to do so.

It was not shown that the custom which plaintiff testified obtained at Los Angeles Harbor or Long Beach Harbor was a general and uniform custom or that it was followed at other ports. Although he testified that at Los Angeles Harbor (meaning Long Beach Harbor) "You were paid for the amount of excess hours *you put in* over the stipulated number of hours that you were supposed to work" he did not explain whether the "hours *you put in*" included time when the employee was merely "on call," or "on standby," or whether tugboat captains or pilots were "on call" or "on standby" where the alleged custom prevailed, or whether they were paid by the month or by the hour, or whether they were in the employ of the owners of ships they helped to dock at monthly wages or worked by the hour for harbor authorities. (Italics ours.)

Section 1646, Civil Code, provides that where a contract indicates a place of performance it is to be interpreted according to the law and usage of that place. The contract was to be performed in Saudi Arabia or other foreign locality. Plaintiff says that in the absence of proof of foreign law California law governs. (5 Cal.Jur., § 12, p. 431.) It is California law we have been discussing. There was no evidence of any custom among shipowners and operators in Saudi Arabia or of American companies employing captains or pilots for service in Saudi Arabia to pay their tugboat captains or pilots anything more than their monthly salaries, even though they actually worked or were "on call" or "on standby" more than 8 hours, or any other given number of hours per day. If there was a custom in Saudi Arabia, with respect to overtime pay, or any custom or practice other than that followed by defendant, plaintiff had the burden of proving it, and should have known of it at the time of trial. It seems clear from his testimony that he is complaining of the fact there was no such custom.

Parties may be bound by a special or local custom if they have knowledge of it and contract with reference to it. Plaintiff did not attempt to bring himself within this rule and does not rely upon it.

In its very thorough opening brief defendant cited numerous cases stating the rule that in the absence of express agreement compensation cannot be collected for overtime work which is of the same nature as the work contracted for, even

though the hours of labor are fixed by contract or by statute. Plaintiff answers that he is not claiming overtime pay under an implied contract, but solely under the express written agreement which he pleaded. We have fully answered his contentions, and there are no additional points which need be considered.

Upon a retrial plaintiff could not establish a right under his contract to be paid for overtime.

The judgment is reversed with instructions to make new findings and conclusions in accordance with the views herein expressed and to enter judgment for defendant.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied June 9, 1952, and respondent's petition for a hearing by the Supreme Court was denied July 10, 1952. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.