[Civ. No. 22748.   Second Dist., Div. Two.   June 9, 1958.]

ARTHUR M. MAIN, Respondent, v. CLAREMONT UNIFIED SCHOOL DISTRICT et al., Appellants.

190

Harold W. Kennedy, County Counsel (Los Angeles), William E. Lamoreaux, Assistant County Counsel, and James W. Briggs, Deputy County Counsel, for Appellants.

Beardsley, Hufstedler & Kemble, Charles E. Beardsley and Seth M. Hufstedler for Respondent.

ASHBURN, J.—Appeal by Claremont Unified School District and members of its governing board from judgment in mandamus ordering restoration of respondent Main to his position as superintendent of said school district and directing payment of his salary at the rate of $750 a month from February 29, 1956, so long as he shall lawfully remain such superintendent.

Respondent was employed as superintendent for said district for a four-year term beginning July 1, 1955, and ending on June 30, 1959. This was done by motion duly adopted on December 14, 1954, "by the terms of which it [the board] approved an offer to petitioner of a four year contract as superintendent and business manager of said school district, said contract to become effective on July 1, 1955; that petitioner thereupon accepted said offer and that said offer and such acceptance thereof were recorded in the official minutes of said meeting." (Finding IV.) This was followed by

written contract dated June 13, 1955. Petitioner performed the duties of superintendent from July 1, 1955, until February 29, 1956, when he was discharged as superintendent by action of the board. Since that time he has been prevented from further performing his contract. He petitioned for mandamus, the writ was granted and the district and its board members appeal.

Respondent's brief says ". . . that the large majority of evidence introduced by him in the trial court was devoted to the proof of his full and proper performance of the terms of his contract." The trial judge ruled that a school superintendent is a public officer, can be removed only in a manner prescribed for public officers and "[i]n view of the court's foregoing findings it is unnecessary to pass or make any finding on the issue of whether or not petitioner performed any or all of the provisions of said contract of June 13, 1955."

The instant case closely parallels *Titus* v. *Lawndale School Dist.*, 157 Cal.App.2d 822 [322 P.2d 56], in which this court held that there is no method provided by the Education Code for unilateral termination by the school board of the contract or services of a superintendent who has a four-year contract; like any other agreement it may be terminated for substantial nonperformance; the question of breach of contract by the superintendent is to be determined in an appropriate court action; a district which has discharged its superintendent and prevented him from further performing has the burden of proving good cause for a dismissal; mandamus is an appropriate remedy for the superintendent to pursue and the issue of breach of contract is properly tried therein. The Titus case was reversed because the trial judge had refused to pass upon the issue of good cause for discharge of the superintendent, the court having the evidence upon the subject before it, the court saying at page 838: "Upon a retrial the court should determine whether good cause existed for discharge of appellant from his position as superintendent of schools."

The instant case is so closely similar to Titus that it must result in like disposition unless there is merit in the contention now earnestly advanced by respondent that a city school superintendent is a public officer and cannot be discharged or removed except upon accusation of the grand jury under Government Code, section 3060, or some other procedure prescribed for removal of a public officer. That question, though presented, was deemed unnecessary to the decision in Titus, *supra* (see p. 837). Upon principle and authority we con-

clude that a school superintendent is not a public officer but is an employee of the district. To said matter we now address ourselves.

Preliminarily it should be noted that the Claremont Unified School District is a unified district falling within section 4629, Education Code, which declares, "for all purposes the district shall be deemed a city school district governed by a city board of education and the governing board thereof shall be deemed a city board of education." There seems to be no dispute about the fact that appellant district has the status of a city school district. Section 4629[1] thus makes applicable the chapter on superintendents (§§ 1301-1308). Section 1301 says: "The governing board of any school district may *employ* a district superintendent for one or more schools *employing* eight teachers or more."[2] Section 1301.1 provides that the board of any district "*employing* a district superintendent of schools" and having average daily attendance of 1500 or more "may *employ* such deputy and assistant district superintendents of schools as the board deems necessary." Section 1302 provides that in each city school district the board may *employ* a superintendent and such associate and deputy or assistant superintendents as it deems necessary, "and may fix and order paid their compensation, unless otherwise prescribed by law." Section 1303, differentiating between city districts and others, says: "A city superintendent of schools *elected* by a board of education shall be *elected* for a term of four years. Any district superintendent of schools, associate superintendent of schools, or deputy city or district superintendent of schools, or assistant city or district superintendent of schools may be *elected* for a term of four years." The city superintendent must be elected for four years; other district superintendents may be elected for four years or less. In this section the verb shifts from "employ" to "elect." Section 1303.1 reverts to the idea of employment by contract. It authorizes termination "with the consent of the *employee*" of "the term of *employment* of, and any *contract* of *employment* with, the superintendent of schools" and says that the board may "*re-elect* or *re-employ* the *employee*, on such terms and conditions as may be mutually agreed upon by the board and the *employee*,

[1]All code references herein point to the Education Code unless otherwise indicated.

[2]All emphasis found in quotations from the Education Code has been supplied.

. . ." Likewise, section 1303.2 says that in case the board decides that the superintendent "is not to be *re-elected* or *re-employed*" upon the expiration of his term, he shall be given six months written notice in advance; if the notice is not given the superintendent, even though the board "fails to *re-elect* or *re-employ*" him, "shall be deemed *re-elected*" for a like term and upon like terms, conditions and compensation.[3]

The word "elect" as used in section 1303 is stressed by respondent as indicative of public office. But sections 1303.1 and 1303.2 use it as synonymous with "employ." In its strict sense "elect" means selection by the appropriate body of qualified voters; when used with reference to selection by a subordinate body, such as a city council or a school board, it connotes appointment or employment. "The words 'elected'

---

[3] At the times here pertinent the above mentioned sections read as follows:

§ 1301: "The governing board of any school district may employ a district superintendent for one or more schools employing eight teachers or more."

§ 1301.1: "The governing board of any school district employing a district superintendent of schools and having an average daily attendance of fifteen hundred or more pupils may employ such deputy and assistant district superintendents of schools as the board deems necessary."

§ 1302: "In each city school district governed by a city board of education, the board may employ a city superintendent of schools and such associate superintendents of schools, and deputy or assistant city superintendents of schools as it deems necessary, and may fix and order paid their compensation, unless otherwise prescribed by law."

§ 1303: "A city superintendent of schools elected by a board of education shall be elected for a term of four years. Any district superintendent of schools, associate superintendent of schools, or deputy city or district superintendent of schools, or assistant city or district superintendent of schools may be elected for a term of four years."

§ 1303.1: "The governing board of any school district, with the consent of the employee concerned, may at any time terminate, effective on the next succeeding first day of July, the term of employment of, and any contract of employment with, the superintendent of schools, or any associate, deputy, or assistant superintendent of schools of the district, and re-elect or re-employ the employee, on such terms and conditions as may be mutually agreed upon by the board and the employee, for a new term to commence on the effective date of the termination of the existing term of employment."

§ 1303.2: "In the event the governing board of a school district determines the superintendent of schools of the district is not to be re-elected or re-employed as such superintendent upon the expiration of his term, the superintendent of schools shall be given written notice thereof by the governing board at least six months in advance of the expiration of his term. In the event the governing board of a district fails to re-elect or re-employ the superintendent of schools of the district as such superintendent and the written notice herein provided for has not been given, the superintendent of schools shall be deemed re-elected for a term of the same length as the one completed and under the same terms and conditions and with the same compensation."

and 'appointed' ordinarily are not synonymous. In its limited sense the word 'elected' is usually employed to denote the selection of a public officer by the qualified voters of a community. On the other hand the word 'appointed' is generally understood to mean the selection of a public officer by one person who is empowered by law to make the appointment. In its broadest sense, however, the word 'elected' means merely selected. When used in that sense the word 'elected' is synonymous with the word 'appointed'; and where, as in the case at bar, a public officer has been selected by the votes of several members of a city council, it may be truly said in the broadest sense of the term that he was elected." (*Odell* v. *Rihn*, 19 Cal.App. 713, 719 [127 P. 802].) "There is a clear and well-understood distinction between appointment and election. In *Wickersham* v. *Brittan*, 93 Cal. 34 [15 L.R.A. 106, 28 P. 792, 29 P. 51], this court said: 'The term "election" carries with it the idea of a choice, in which all who are to be affected with the choice participate, whereas from the word "appointment" we understand that the duties of the appointee are for others than those by whom he is appointed. As distinguished from an election, an appointment is generally made by one person, or by a limited number, acting with delegated powers, while an election is the direct choice of all the members of the body from whom the choice can be made.' " (*Mono County* v. *Industrial Acc. Com.*, 175 Cal. 752, 754 [167 P. 377].) To the same effect are *Carter* v. *Commission on Qualifications*, 14 Cal.2d 179, 186 [93 P.2d 140]; 40 Cal. Jur.2d § 41, p. 676.

The term "employ" implies the making of a contract. *Malloy* v. *Board of Education*, 102 Cal. 642 [36 P. 948], makes this clear. In that instance, "the members present regularly proceeded to ballot for the election of a teacher to fill the vacancy" (p. 644), and thus chose plaintiff. Before he had accepted the board in effect rescinded the resolution. At page 646 the court said: "The board, as we have seen, was authorized to employ teachers, but in what way the employment might be effected was not prescribed. . . . Employment implies a contract on the part of the employer to hire, and on the part of the employee to perform services, and until such a contract is mutually entered into it can have no binding obligation upon either party. The words 'to employ' teachers can mean nothing more, therefore, than that the board was clothed with power to contract with suitable persons to engage in the work of teaching in the public schools of the city for a

fixed salary or compensation. . . . The ballots were only an expression of choice on the part of the members casting them, and had no greater force or effect than an oral vote would have had. At most they amounted only to an offer of employment, which respondent had a right to refuse, and the board had a right to revoke or cancel at any time before acceptance. But when the board refused then and there to declare respondent elected, it did in effect revoke and cancel the offer, and leave nothing thereafter for her to accept; and whether in doing so the board acted under the supposed requirement of its rule, or by-law, or independently of it, is quite immaterial.''

Independently of specific authorization of the Education Code (which, as declared in § 2 thereof is a restatement and continuation of previously existing and substantially similar enactments), the school board has a right to contract with teachers as an exercise of its general powers. (*Marion* v. *Board of Education*, 97 Cal. 606, 608 [32 P. 643]; *Gould* v. *Santa Ana High School Dist.*, 131 Cal.App. 345, 349 [21 P.2d 623].) But, as shown by the above quoted sections, the code plainly recognizes the propriety of express contracts. Numerous other sections treat a teacher's status as one created by an employment. Section 12001 provides that only certificated persons shall be *employed* in positions requiring certification qualifications. Section 12008 defines the word ''certificate,'' when used as a verb, as referring to ''licensing individuals for *employment* in educational positions.'' Section 13001: ''Governing boards of school districts shall *employ* persons in public school service requiring certification qualifications as provided in this code.'' Section 13031: ''Governing boards of school districts shall *employ* for positions requiring certification qualifications, only persons who possess the qualifications therefor prescribed by law.'' Section 13081 defines the term ''permanent employee.'' Other examples of recognition of employee status of teachers are found in sections 12200, 13001.1, 13003.1, 13004, 13031.1, 13034, 13035, 13037, 13038 and 13090.

The word ''elected'' appears in section 13002, which applies to probationary employees (§ 13101). Section 13002 says: ''Persons in positions requiring certification qualifications may be *elected* for the next ensuing school year on or after the first day of May, and each person so *elected* shall be deemed *re-elected* from year to year except as provided in this chapter.'' Section 13003 refers to election or employment in a manner

indicating interchangeability of those terms: "Any certificated employee not under permanent tenure who fails to signify his acceptance within 20 days after notice of his *election* or *employment* has been given him . . . shall be deemed to have declined the *employment.*"

Section 13032, relating to principals, says: "The governing boards of each school district shall *employ* a principal for each school under their control." Section 13033 authorizes certain districts to unite "in the *employment* of a supervising principal." Section 13089 covers a superintendent, saying: "A person *employed* in an administrative or supervisory position requiring certification qualifications upon completing a probationary period, including any time served as a classroom teacher, in the same district, shall, in a district having an average daily attendance of 850 or more pupils, be classified as and become a permanent *employee* as a classroom teacher. . . ."

Teachers, principals and superintendents must possess qualifications prescribed for a teacher (§§ 1304, 13034). All of them are "elected"—elected for one-year terms, except superintendents (other than city superintendents) who may be "elected" for terms varying from one to four·years; city superintendents must be "elected" for four years (§§ 13002, 1303). Although a principal or superintendent cannot acquire tenure with respect to his administrative or supervisory function, he can, after serving the requisite period (three years plus election for a fourth year), revert to permanent status (tenure) as a classroom teacher. (*Holbrook* v. *Board of Education,* 37 Cal.2d 316, 334 [231 P.2d 853].) If a teacher's election be but an employment for a single school year, it seems but a short step to the conclusion that a superintendent's election for one or two or three or four years is but an employment, not a public office.

The law is definitely settled in this state that a *teacher* does not hold a public office and serves as an employee of the district under an employment contract. (*Leymel* v. *Johnson,* 105 Cal.App. 694, 702 [288 P. 858] ; *Martin* v. *Fisher,* 108 Cal. App. 34, 39 [291 P. 276] ; *Weiser* v. *Payne,* 110 Cal.App. 378, 380 [294 P. 407] ; *Fidler* v. *Board of Trustees,* 112 Cal.App. 296, 303-304, 306 [296 P. 912] ; *Gould* v. *Santa Ana School Dist., supra,* 131 Cal.App. 345, 349 ; *Wood* v. *Los Angeles City School Dist.,* 6 Cal.App.2d 400, 402 [44 P.2d 644] ; *Kimball* v. *Ledford,* 13 Cal.App.2d 602, 604 [57 P.2d 163] ; *Board of Education* v. *Ballou,* 21 Cal.App.2d 52, 55 [68 P.2d 389] ;

*Taylor* v. *Board of Education,* 31 Cal.App.2d 734, 743 [89 P.2d 148] ; *Marion* v. *Board of Education, supra,* 97 Cal. 606, 608; *Abraham* v. *Sims,* 2 Cal.2d 698, 709 [34 P.2d 790, 42 P.2d 1029] ; *Richardson* v. *Board of Education,* 6 Cal.2d 583, 586 [58 P.2d 1285] ; *Fry* v. *Board of Education,* 17 Cal.2d 753, 759-760 [112 P.2d 229] ; *Kacsur* v. *Board of Trustees,* 18 Cal. 2d 586, 591 [116 P.2d 593].)

■ In *Leymel* v. *Johnson, supra,* at page 697, it is said: " 'The words "public office" are used in so many senses that the courts have affirmed that it is hardly possible to undertake a precise definition which will adequately and effectively cover every situation. ■ Definitions and application of this phrase depend, not upon how the particular office in question may be designated nor upon what a statute may name it, but upon the power granted and wielded, the duties and func-tions performed, and other circumstances which manifest the nature of the position and mark its character, irrespective of any formal designation.' " ■ At page 699: "It would seem, therefore, that one of the necessary characteristics of a public officer is that he perform a public function for the public benefit and that in so doing he be invested with the exercise of some of the sovereign powers of the state. No matter how highly we regard the profession of teaching, we cannot conclude that the teacher is exercising some of the sovereign powers of the state in performing the arduous duties of his profession. . . ." At page 702: "The conclusion that the status of a teacher is that of an employee is irresistible. The position is secured by selection by the board of trustees and the terms of the employment are fixed by contract, the author-ity for which is found in the Political Code (§ 1609). Under its general powers the board of education is authorized to enter into contracts with teachers and fix their compensation and terms of employment. . . . The contract of employment of a teacher produces the relation of employer and employee, the first, the board of education, and the second, the teacher." *Abraham* v. *Sims, supra,* at page 711: " 'It is perfectly true, as said in *Martin* v. *Fisher,* 108 Cal.App. 34, 39 [291 P. 276], that "the position of a teacher in the public schools of Cali-fornia is not an office." It is strictly an employment and initiated by a contract.' "

■ Existence of a contract of employment is essentially inconsistent with the status of public officer. *Mono County* v. *Industrial Acc. Com.,* 175 Cal. 752, 753 [167 P. 377] : "Under these sections, the essential condition of the relation of em-

ployer and employee is 'service under any appointment or contract of hire, or apprenticeship.' Does this language describe the status of an officer, like a sheriff, holding his office by virtue of an election, taking an official oath, giving an official bond, and having a tenure fixed by law? Certainly such an officer is not in service under any contract. 'It is well settled that salaried public offices, created by the legislature, are not held by contract.' " *Coyne* v. *Rennie*, 97 Cal. 590, 593 [32 P. 578] : "It is well settled that the mere appointment or election of a municipal officer for a specified time and salary creates no contractional relation, if such officer is at liberty to resign whenever he may elect to do so. 'Neither acts of the legislature nor ordinances of city councils or boards naming terms and salaries are in the nature of contracts with officers. Although the term and salary may be named in the charter, yet there is no contract for a stipulated time or price that is binding on the public.' " To the same effect, see *Martello* v. *Superior Court*, 202 Cal. 400, 408 [261 P. 476] ; *Pacific Finance Corp.* v. *City of Lynwood*, 114 Cal.App. 509, 514 [300 P. 50, 1 P.2d 520] ; *Foucht* v. *Hirni*, 57 Cal.App. 685, 691 [208 P. 362] ; 40 Cal.Jur.2d § 11, p. 650; § 12, p. 651; § 13, p. 652.

That the same considerations govern the status of supervising or administrative certificated employees appears from *Nielsen* v. *Richards*, 69 Cal.App. 533, 542 [232 P. 480], and *Holbrook* v. *Board of Education*, *supra*, 37 Cal.2d 316, 331. The Nielsen case involved a "supervising teacher." At page 542 the court said: "Neither teachers nor supervising teachers are public officers. This is clear, not only from the duties to be performed, but from the terms of the sections of the Political Code under consideration, which authorize the 'employment' of supervising teachers. Public officers are elected or appointed rather than employed."

It was observed in *Titus* v. *Lawndale School Dist.*, *supra*, 157 Cal.App.2d 822, 826 that: "Correct solution of these questions requires studious recognition of the difference between the superintendent's contract rights and his potential tenure rights under the teachers' tenure act (§§ 13081-13104)." Holbrook, *supra*, gives emphasis to this thought. It dealt with one who was both business manager and director of adult education. Petitioner, who had no contract other than that following an election for a yearly period, had devoted three-fourths of his time to administrative work and one-fourth to teaching. The school board classified him as a permanent one-fourth time director of adult education and

three-fourths time as business manager non-certificated. The board later resolved to discontinue his services as business manager and to employ him for one-fourth time only to direct adult education. He then sought mandate to compel reinstatement to full time employment in the district. The Supreme Court held, at page 333: "Having been elected to a full-time position for three consecutive school years, some of the duties of which required certification qualifications, appellant is entitled to permanent full-time employment in the district if he was reelected for the fourth year in a position requiring certification qualifications." At 334: "While the present statute makes it clear that a principal or other supervisory employee need not perform any teaching services in order to be entitled to tenure, there has been no change in the provision that such persons become permanent employees as classroom teachers after the probationary period is served. (See *Griffin* v. *Los Angeles City H. S. Dist.* (1942), 53 Cal. App.2d 350 [127 P.2d 939].) Accordingly, appellant is entitled to be classified as a permanent classroom teacher. This does not, of course, affect our conclusion that respondent board exceeded its authority in purporting to reduce appellant to part-time employment." The citation of the Griffin case shows that this language was intended to mean that tenure does not apply to administrative or supervisory functions, but that one who performs them, having the necessary certificate or certificates, earns in due course a right to tenure as a schoolroom teacher. At page 331 the Holbrook opinion says: "The relationship between respondent board and appellant is that of employer and employee and this relationship is created by contract. (*Gould* v. *Santa Ana H. S. Dist.* (1933), 131 Cal.App. 345, 349-350 [21 P.2d 623].) . . . The result of the tenure statutes 'was not to make the relation any the less one originating in contract, but to annex to contracts of employment when repeated for a sufficient time certain legal consequences' (*Abraham* v. *Sims*, 2 Cal.2d 698, 710 [34 P.2d 790, 42 P.2d 1029]; see also *Kacsur* v. *Board of Trustees*, 18 Cal. 2d 586, 591 [116 P.2d 593].)" This status of director of adult education, a position requiring certification qualifications, so closely resembles that of a superintendent of schools as to make the Holbrook case highly persuasive in the case at bar.

Our exact problem was solved in *Stewart* v. *Eaves* (1927), 84 Cal.App. 312 [257 P. 917], which holds that a city school superintendent is not a public officer but is an em-

ployee. The ultimate question there was whether the board and the superintendent could mutually rescind the superintendent's contract and enter into a new one at a higher salary. The objection was that the superintendent was a public officer and therefore his compensation could not be increased after his election and during his term of office; that this would offend article XI, section 9 of the Constitution. The court rejected this contention, saying at page 320: "In the case of *San Diego* v. *Dauer,* 97 Cal. 442, 444 [32 P. 561], it is assumed, and that assumption has never been questioned or contradicted, that a city superintendent of schools is an employee and not a public officer. The law as hereinbefore set out with respect to the powers and duties of the boards of education, and contained in sections 1609-1741 of the Political Code, and section 56 of the Santa Barbara charter, is comprehensive and would appear to eliminate the vesting of any statutory or charter powers in the city superintendent. His duties apparently are entirely ministerial and not outlined or enumerated by any law; he is not required to give any bond for the faithful performance of his duties nor take any oath of office. The only provision of the law which is usually incident to a public officer, and which governs in the appointment of a city superintendent, is the section of the Political Code fixing a four-year term of office, which section, however, does not fix any specific time either for the beginning or termination of that term. In the absence of any charter provision or statutory law defining the duties of a city superintendent it may be fairly deduced that neither the state nor the municipality intended to vest this officer with any of the sovereign powers of the state or municipality, except such as are directed by the employing power which, under the statute and the charter, have complete control and government of the city schools. We have found nothing in the statutes nor in the municipal charters, nor in the decisions of the higher courts of this state that define the official status of a city school superintendent. As before indicated, in the case of *San Diego* v. *Dauer, supra,* the supreme court said, 'Assuming therefore, that the superintendent of schools of the city of San Diego is an employee of the board of education of that city,' which assumption has been the prevailing opinion with respect to that matter for thirty-four years and has been and still is being acted upon with the acquiescence of the legislative departments of the state and by every day practical application in the civil municipalities, it would seem

that we have reached a stage in this state with respect to city superintendents of schools where it must be held that the legislature has conclusively determined in sections 1609 and 1793 of the Political Code that these officers are employees and not public officers, otherwise the delegation of power by that body to municipalities to fix such salaries is unwarranted and illegal.'' At 321: '' 'Employment arising out of the contract whereby the person employed acts under the direction or control of others, and which employment depends for its duration and extent upon such a contract, is not an office.' '' This case was followed in *Johnston* v. *Rapp* (1951), 103 Cal.App.2d 202, 205 [229 P.2d 414], wherein the court decided the same question of power to increase the superintendent's salary during the term of his contract, which in that instance provided that the board reserved the right to increase the salary during the term. The Stewart case, *supra,* has not been disapproved by the Supreme Court or criticized by any District Court of Appeal so far as research has revealed. Counsel for respondent would distinguish the Stewart case upon the basis of subsequent changes in the statute and through application of certain general definitions of the term ''public office.''

■ The contract at bar merely defines the duties of respondent as follows: ''The duties of the superintendent shall be to serve as Superintendent in charge of all educational and financial matters pertaining to the operation of the school district and to serve as chief executive officer of the Board of Education.''[4] Section 4629 makes sections 1301 et seq. the governing law in the present instance. Section 1306 (passed in 1943) defines the superintendent's powers and duties as follows: ''The superintendent of each school district shall, in addition to any other powers and duties granted to or imposed upon him: (a) [*Chief executive officer.*] Be the chief executive officer of the governing board of the district. (b) [*Preparation and submission of budget.*] Excepting in districts where the governing board has appointed or designated an employee other than the superintendent, or a deputy, or assist-

[4]This probably was due to a mistaken belief that § 4951 applied to appellant district; that section defines the duties of superintendent as ''executive officer and secretary of said governing board.'' But, as that section is found in a chapter of the code applying only to unified districts formed pursuant to the ''optional reorganization'' provisions added to the code in 1945, and appellant was formed prior to that year, pursuant to chapter 14, division 2 of the code, section 4951 cannot apply to it, and this seems to be conceded by counsel for both sides.

ant superintendent, to prepare and submit a budget, prepare and submit to the governing board of the district, at such time as it may direct, the budget of the district for the next ensuing school year, and revise and take such other action in connection with the budget as the board may desire. (c) [*Assignment of employees to positions.*] Subject to the approval of the governing board, assign all employees of the district employed in positions requiring certification qualifications, to the positions in which they are to serve." By amendment of 1957 subdivision (d) was added: "[*Contracts.*] Enter into contracts for and on behalf of the district pursuant to Section 18071." Said section 18071, also passed in 1957, authorizes delegation to the superintendent of the board's power to contract, with this proviso: "[P]rovided, however, that no contract made pursuant to such delegation and authorization shall be valid or constitute an enforceable obligation against the district unless and until the same shall have been approved or ratified by the governing board, said approval or ratification to be evidenced by a motion of said board duly passed and adopted."

Counsel for respondent stress the language of the Stewart case, *supra,* 84 Cal.App. 312, to the effect that the superintendent's "duties apparently are entirely ministerial and not outlined or enumerated by any law;" also the sentence: "In the absence of any charter provision or statutory law defining the duties of a city superintendent it may be fairly deduced that neither the state nor the municipality intended to vest this officer with any of the sovereign powers of the state or municipality, except such as are directed by the employing power which, under the statute and the charter, have complete control and government of the city schools." (P. 320.) It is insisted that that is the principal basis of the decision and that the foundation has been swept away by the later enactment of section 1306 which does define the duties. In the same connection counsel invoke definitions of "public office," such as found in *Leymel* v. *Johnson, supra,* 105 Cal.App. 694, 697: "'Of the various characteristics attached to public office by definition, some are regarded as indispensable, and others, while not in themselves conclusive, are yet said to indicate more or less strongly the legislative intent to create or not to create an office. One of the prime requisites is that the office be created by the Constitution or authorized by some statute. And it is essential that the incumbent be clothed with a part of the sovereignty of the state

to be exercised in the interest of the public.' '' This language was quoted with approval in *People* ex rel. *Chapman* v. *Rapsey*, 16 Cal.2d 636, 639 [107 P.2d 388], and in *Schaefer* v. *Superior Court*, 113 Cal.App.2d 428, 432 [248 P.2d 450]. In the last mentioned case Mr. Justice Parker Wood examined the content of "sovereignty" as used in this connection, concluding that exercise of independent power is of the essence, and that it was absent in the case of an auditor of the department of employment there under consideration. At page 432 the following is quoted from a Missouri case: " 'Illustrative of what is meant by "sovereignty of the State," in the same opinion it is said: "If specific statutory and independent duties are imposed upon an appointee in relation to the exercise of the police powers of the State, if the appointee is invested with independent power in the disposition of public property or with power to incur financial obligations upon the part of the county or State, if he is empowered to act in those multitudinous cases involving business or political dealings between individuals and the public, wherein the latter must necessarily act through an official agency, then such functions are a part of the sovereignty of the State." ' ''

Examination of section 1306 reveals that the superintendent is the chief executive officer of the board, not the district; that he is charged with preparation and submission of the budget at such time as directed by the board unless someone else has been designated by it to perform that function; that the superintendent when he submits the budget must "revise and take such other action in connection with the budget as the board may desire." His assignments of teachers are also subject to approval of the board. Under the 1957 amendment his power to enter into contracts (§ 1306, subd. (d)) is limited to those which have been approved or ratified by resolution of the board. In no real sense does the superintendent exercise independent powers. Always he operates under control of the board and hence exercises none of the sovereignty of the state.

Respondent's reliance upon *West* v. *Board of Education*, 43 Cal.App. 199 [184 P. 877], is misplaced. The case makes no holding inconsistent with *Stewart* v. *Eaves, supra*. The question there considered was not involved. The West dispute was whether the statute or the Pasadena charter provision governed as to term of employment of a superintendent. The closest approach to the Stewart-Eaves problem is found at page 202 in the following language, which is entirely con-

sistent therewith: "The resolution first adopted was sufficient in form to express contractual terms, if accepted by petitioner. The employment as offered was promptly accepted and upon acceptance being made a binding contract arose, unless by reason of the law the action taken was in some particular unauthorized."

We conclude that *Stewart* v. *Eaves, supra,* remains the law of this state and that a city or district superintendent of schools is not a public officer but is an employee of the district. Hence the rules announced in the Titus case, *supra,* 157 Cal.App.2d 822, are fully applicable here.

One other point requires discussion, the matter of salary for the last two years of the contract term.

Petitioner had been acting as superintendent for two years before he was hired for the four-year period. The motion to employ him made no mention of salary, nor did he do so when orally accepting the proffered employment. He later handed to his secretary the written contract covering his previous two-year tenure and told her to adapt it to the new employment. Following its form she designated the employment as that of superintendent for a four-year term, and then copied the former contract as follows: "The salary of the superintendent shall be paid as specified below: The estimated annual salary for the first year of service will be $9,000.00, payable at the rate of $750.00 per calendar month for 12 months of service beginning July 1, 1955, and ending June 30, 1956. The salary rate for the subsequent year shall be determined by Board action prior to July 1, and it is stipulated that the salary rate for this year shall not be less than the salary rate paid during the first year of service under this contract." Thus the third and fourth years escaped mention salary-wise. Petitioner was paid $750 a month until his discharge on February 29, 1956. The trial court found: "That it was the intent of the parties prior to February 11, 1956, under the contract of June 13, 1955, and by the election of petitioner that the annual salary of petitioner for each calendar year of said four year term should be not less than $9,000, that is to say, not less than $750 per calendar month for 12 months each year beginning on July 1, 1955, and ending on June 30, 1959." Appellant says that this is erroneous; that the vacuum in the contract cannot be filled in this manner and that respondent's only remedy is an action for reformation; that the petition for mandate contains no appropriate allegations to that end. We hold that this is not a case for

reformation, but one for legitimate implication of an unexpressed term of agreement.

Section 1655, Civil Code, provides: "Stipulations which are necessary to make a contract reasonable, or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention." Section 1656: "All things that in law or usage are considered as incidental to a contract, or as necessary to carry it into effect, are implied therefrom, unless some of them are expressly mentioned therein, when all other things of the same class are deemed to be excluded." *Cousins Inv. Co. v. Hastings Clothing Co.*, 45 Cal.App.2d 141, 143 [113 P.2d 878] : "It may be stated generally that implied covenants are not favored in the law; and courts will declare the same to exist only when there is a satisfactory basis in the express contract of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties to the contract made. Furthermore, implied covenants can be justified only upon the ground of legal necessity arising from the terms of the contract, or the substance thereof, and the circumstances attending its execution; and the implication from the words must be such as will clearly authorize the inference of an imputation in law of the creation of a covenant." *Sharpe v. Arabian American Oil Co.*, 111 Cal.App.2d 99, 102 [244 P.2d 83] : "If the parties have omitted from the agreement something that was so clearly a part of their understanding that the agreement would be unworkable without it, and which would have been incorporated without question if either party had requested it, the missing stipulation will be implied as a part of the agreement. But before this may be done justification, and the necessity for it, must be found in the agreement. Nothing may be added by way of implication except that which is necessary to carry out the intentions of the parties, as derived from the agreement itself and not merely from the circumstances under which it was made."

Petitioner had been working in the position of superintendent for two years and receiving a salary of $9,000 per annum. When agreeing upon a new term for four years, without mention of any reduction in compensation, it is inferable only that it should be no less than previously. Employment on a permanent basis implies satisfaction with former services and permits of no inference of a reduction in salary without express mention of the fact. The specific

stipulation that the salary rate for the second year should be no less than the first emphasizes this thought. Unless like provision be implied for the third and fourth years the contract is unworkable *pro tanto*. Plainly, a $9,000 salary would have been specified without question if either party had noticed its omission, and justification for this inference is found in the agreement which hires respondent for four years and in express terms fixes his salary for only two. We conclude that such implication of a $9,000 salary for the last two years is likewise justified upon the ground of legal necessity, and that the trial judge was correct in so holding.

Applying the principles settled by the Titus case, *supra*, 157 Cal.App.2d 822, it appears that respondent is entitled to mandamus herein unless appellant district has borne, or hereafter bears, the burden of proving good cause for his dismissal as superintendent; but the trial judge having declined to pass upon that controlling issue, the judgment must be reversed.

Accordingly, the judgment is reversed with instructions to the trial court to find upon the issue of whether good cause existed for the discharge of respondent from his position as superintendent of schools, and to take any other appropriate proceedings not inconsistent with the views herein expressed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied July 3, 1958, and respondent's petition for a hearing by the Supreme Court was denied August 6, 1958. Carter, J., was of the opinion that the petition should be granted.